402 A.2d 1027

COMMONWEALTH of Pennsylvania, Appellee,

v.

Floyd WILSON, Jr., Appellant.

Supreme Court of Pennsylvania.

Argued April 24, 1979.

Decided July 6, 1979.

410

James P. McHugh, Chester, for appellant.

D. Michael Emuryan, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Following his arrest in Delaware County for murder and related crimes, Floyd Wilson, Jr., incriminated himself in oral and written statements to the police. A pretrial motion to suppress evidence of these incriminations was denied after an evidentiary hearing. Subsequently, Wilson was brought to trial before a jury and was found guilty of

murder of the first degree, attempted robbery, criminal conspiracy, and crimes committed with firearms. Post-verdict motions were denied, and a sentence of life imprisonment was imposed on the murder conviction. Additional prison sentences were imposed on the robbery and conspiracy convictions. An appeal from the life imprisonment sentence was filed directly in this Court. An appeal filed in the Superior Court from the other judgments of sentence was later certified here.

█ In his opening statement at trial, the assistant district attorney told the jury of Wilson's incriminating statements following his arrest and quoted from the written statement.[1] However, the statements were not introduced into evidence or referred to again during the trial. Wilson contends the foregoing violated his constitutional right of confrontation (*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)) and caused an unfair trial. Since we agree with the latter contention, we need not reach the *Bruton* issue.

1. In his opening statement, the assistant district attorney gave an extended definition and explanation of the criminal charges. He then minutely recited the circumstances of the attempted robbery and killing and described Wilson as one of the two armed participants. He then told of the seizure of a .32 caliber pistol from under a mattress in Wilson's father's bedroom and Wilson's arrest and interrogation at police headquarters. The assistant district attorney then followed with this:

"Interrogation of Wilson started. He gave an oral statement and that will be produced for you. He later signed a written confession, signed it on each and every page of the confession, after speaking to his father at police headquarters, and his father signed the confession at the end. That confession—and you will hear the words of it—does not say that the pistol used in the death is in his father's home. It says that it has been thrown away, discarded. What significance? Later that day sometime in the afternoon of the 26th after the written statement has now been taken, concluded, sometime in the morning after all of the formal proceedings involving Wilson have been completed, the bullet from Bob Sparks' body is recovered. It had not gone through his body. It has been recovered and can be compared for ballistics purposes.

"Wilson is now informed of this fact by Detective John Lister of the Criminal Investigation Division of the District Attorney's Office. And at this time he says, yes, that's it. That's the gun I used. I killed him."

If a confession is introduced into evidence at trial, the accused has the right to cross-examine those who verify it as to the circumstances and contents. He may also question its accuracy and even deny making it. Here, Wilson was denied the opportunity of making any inquiry as to the confession, its contents or circumstances even though the jury was effectively made aware that he had confessed and that he had "signed a written confession, signed it on each and every page of the confession, and his father signed the confession at the end." Additionally, the jury was told by the assistant district attorney that Wilson had lied and tried to mislead the police as to the gun. All of this was without support in the record.

The most devastating evidence against one accused of crime is a confession or admission of guilt. This case is no exception. Even instructions such as were given here by the court to the jury cautioning that they should dismiss the statement from "your mind" and let it not "enter into your deliberations" could not erase the impact of having the jury know Wilson had confessed. Any person conversant with the mental process of a jury in determining the guilt or innocence of an accused would be hard put to honestly deny this.

The Commonwealth urges that the assistant district attorney was acting in good faith during his opening presentation to the jury and intended as of that moment to make evidentiary use of Wilson's "confession," but changed his mind as the trial progressed. Suffice it to say, the good faith of the prosecuting official does not lessen the prejudice suffered by Wilson.

■ Next, the Commonwealth, without specifically saying so, implies the issue has not been preserved for appellate review because Wilson's counsel "indicated satisfaction" with the trial court's cautionary instructions to dismiss the statement from "your mind." Under the singular circumstances this record presents, we rule the issue is properly before us.

Wilson's counsel made no objection during the opening statement and, in view of the court's pretrial ruling permitting evidentiary use of Wilson's in-custody statements, counsel's silence at this point is understandable. Cf. *Commonwealth v. Fairbanks*, 453 Pa. 90, 306 A.2d 866 (1973), and *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927).

At the close of the Commonwealth's evidence, Wilson's counsel asked to see the court outside the presence of the jury and, at a conference that followed, counsel voiced concern about the assistant district attorney's opening statement that Wilson had given police a statement. The trial judge immediately assumed command, and advised counsel, "I have tried to handle the situation [by giving the cautionary instructions] as best as can be under the circumstances." Defense counsel expressed satisfaction with the instructions insofar as they dealt with a reference to a "statement" Wilson gave to police, but then reiterated his objection if the assistant district attorney referred to a "confession" which, in fact, he did.[2] Further discussion occurred during which defense counsel expressed agreement with the court that a "confession" did exist; that the Commonwealth could have, but did not, introduce it; and, that some advantage to Wilson might result from the "confession" not having been put into evidence. But defense counsel did not express satisfaction with the instructions if the opening statement referred to a "confession."

Fairly read, the record shows the court effectively overruled the objection insofar as it was based on a reference to a "confession." Our view of the record is in accord with that of the trial court in that it discussed the merits of the issue extensively and gave no indication it considered the issue waived in its opinion denying post-verdict motions. Accordingly, we do not believe the issue is waived.

Finally, the trial court ruled the "passing reference" to the "confession" was harmless error. We are not so per-

2. The opening statement had not yet been transcribed.

suaded. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Judgments reversed and new trial granted.

NIX, J., filed a dissenting opinion in which LARSEN, J., joins.

NIX, Justice, dissenting.

I cannot conceive of a more unrealistic basis for disturbing a conviction than the "unfairness doctrine" as it is employed by the majority in this case. The only unfairness is that suffered by the people of this Commonwealth who will be required to accept the expense and uncertainty of a new trial for an utterly unjustifiable reason. I dissent.

During the opening statement to the jury, the Commonwealth's attorney in setting forth the case he intended to present referred to a written, signed confession of the accused, which had been the subject of a suppression motion and had been held by the suppression court to be admissible at trial. There is absolutely no question as to the appropriateness of the reference to the confession in the opening remarks. The reference was accurate, the evidence was available and, as indicated, had been previously ruled admissible. Thus if the Commonwealth had placed this damaging evidence before the jury not only would there have been no basis for the instant complaint but the conviction of the accused before the jury would have been virtually assured.

Nevertheless, a majority of this Court has reached the anomalous conclusion that the appellant was treated unfairly because this piece of evidence which the defense had sought to exclude and which the majority concedes was the most damaging evidence against appellant *was not introduced against him.* As the majority phrases it, the appellant "was denied the opportunity of making any inquiry as to the confession, its contents or circumstances." This argument is so ludicrous that it is difficult to frame a serious response to it.

First, it must be emphasized that this is not a situation where the prosecutor was attempting to put before the jury information that would not have been admissible in trial or that he would have been unable to establish if he elected to do so. To the contrary, out of an abundance of caution, the prosecution decided, during the presentation of the case, that it would not risk a reversal on appeal by placing this testimony before the jury.[1] Moreover, when the decision not to introduce this evidence was made known to the court and opposing counsel, there was no outcry from the defense demanding its introduction as the majority intimates. To the contrary, the record reveals that the defense was quite pleased to learn of the decision.[2] Additionally, the court gave curative instructions, which according to my reading of the record were satisfactory to the defense. Most importantly, the defense did not request additional instructions on the point or attempt to seek a mistrial.[3] Since the alleged

1. It would seem to me that we should be encouraging prosecutors who have the foresight to avoid introducing error in the record.

2. The majority opinion is premised upon the assumption that the reference to appellant's statement to the police had a traumatic effect upon the jury. Yet the record reflects that even defense counsel and his associate were unclear as to what was said in the opening statement about this evidence. This fact would dispute the indelible impression that the majority would have us believe the remarks left.

3. During the Commonwealth's case in chief the following appears of record:

THE COURT: Let me interrupt you for a moment, Mr. Crane.
MR. CRANE: Yes.
THE COURT: If I may, please. Members of the jury, you will recall that when Mr. Crane opened to you he made reference to a statement made by this defendant. You have heard what purports to be a statement made by this defendant to a fellow prisoner. I am informed that this is the only statement which will be offered to you. If you are thinking of any other kind of statement, please dismiss it from your mind. There is nothing else in this case besides the statement which was just offered to you. And there is nothing other presented to you in that regard. So if you are thinking of anything else, it should not enter into your deliberations in any way except the statement that you just heard. *Does that satisfy you, Mr. McHugh?*
MR. McHUGH (defense counsel): Yes, sir.
THE COURT: And you, Mr. Crane?

error could only have been redressed by curative instructions, which were given and deemed satisfactory to defense counsel, or a declaration of a mistrial which was never

MR. CRANE: Thank you, sir.

THE COURT: I thought it was an appropriate time to make that comment.

After the Commonwealth rested the following transpired:

MR. CRANE: *Commonwealth rests.*

MR. McHUGH: All right, now, your Honor, may we either see you in chambers or at side bar with the reporter? It might be better after a recess if you are going to because, frankly speaking, sir, my witnesses are not here right now. Mr. Crane finished a lot quicker than I thought.

THE COURT: Members of the jury, due to cooperation to both attorneys we have moved much more quickly than we all anticipated. And it does not surprise me, therefore, that Mr. McHugh's witnesses whom he probably had arranged to be here at a later time are not here now. That's understandable because the case has moved much more quickly. Take the jury to the jury room.

(Whereupon, the jury left the courtroom.)

THE COURT: Gentlemen, as I discussed with you in the retiring room, Mr. Crane indicated that the only statement which would be presented to this jury is the statement presented through the testimony of the witness Eugene Wharton. Mr. Crane, in his opening address, had referred to a statement. I discussed with both of you how we should handle that situation and you agree with my suggestion that I should say something to the jury along the lines that I said to them at the conclusion of Mr. Wharton's testimony.

I wanted to put that on the record so that the record will indicate that we did discuss it prior to the Court's statement. *And I want to inquire of you, Mr. Crane, whether you are satisfied with the Court's handling of that matter?*

MR. CRANE: *Yes, sir, I am.*

THE COURT: *I want to inquire of you, Mr. McHugh.*

MR. McHUGH: *Yes, I'm very satisfied with it, your Honor. But I*—during the last recess I gave the opening statement of Mr. Crane some thought and I also spoke with my associate about it and it is our composite recollection that during the opening address Mr. Crane mentioned the statement to the inmate, and I believe he also mentioned another statement which possibly could have been indicated that there were two statements.

THE COURT: *Well, it was for that reason that I said this was the only statement that would be presented in this case and that any other statement that they might have been thinking of was not to become part of the case.*

Mr. McHugh: *I think that satisfactorily neutralizes that, yes.*

THE COURT: Because it is quite possible that statements can say one thing or another, Mr. McHugh. They can help or not help.

MR. McHUGH: That's true. But I am just trying to wonder—

THE COURT: You are trying to be careful, I understand.

requested. It is impossible for me to understand any basis for the relief that the majority now sees fit to give to appellant.

MR. McHUGH: And I am also still trying to wonder whether he mentioned the word confession and that is something that actually bothers me mentally. I notice that Mr. Share took down the opening address and I don't know whether he would be able to find that or not. But if that is in it, then statement and confession are two things and Mr. Guarente believes that he did mention confession.

MR. GUARENTE: As I recall, your Honor, I believe that Mr. Crane referred to the fact that each and every page had been signed or something to that effect.

MR. McHUGH: Now, that possibly when the jury—the word statement or a statement is neutralized by your instruction which I agree one hundred percent with and I think it is perfectly right, but still there could possibly be the lingering thought or the germ in the collective mind of the jury that there is a confession some place above and apart from the statement.

THE COURT: Well, there is a confession which this Court ruled was admissible.

MR. McHUGH: Yes, I know that.

THE COURT: The Commonwealth, in its wisdom as a matter of trial strategy, has agreed not to present it.

MR. McHUGH: Yes, sir.

THE COURT: Now, I have tried to handle the situation as best as can be under the circumstances, Mr. McHugh.

MR. McHUGH: All right.

THE COURT: I think all of the advantages flow to the defendant as a result of the Commonwealth's decision not to present that confession, the Court having ruled that it was admissible.

MR. McHUGH: Oh, I agree with that, sir. And perhaps I am asking too much. I am not saying that Mr. Crane—

THE COURT: Well, if you think of anything else that might be helpful, you discuss it with me and I will consider telling it to the jury.

MR. McHUGH: Well, I can't think of anything right now.

THE COURT: Well, the trial is not over. But if you do, I will consider it. But I think, under the circumstances, that if there is an advantage, it flows to the defendant in their case.

MR. McHUGH: Well, I just wanted to bring that out because I know you were trying to neutralize the opening address and the reference to statements and that's why I thought it was incumbent upon me to bring this out to you.

THE COURT: All right.

MR. McHUGH: But I am satisfied with the ruling. I have no objection.