Kenneth Lee CHENNAULT, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–82–00974–CR.

Court of Appeals of Texas,
Dallas.

Feb. 13, 1984.

Rehearing Denied March 9, 1984.

---

Bentley Kelly, Dallas, for appellant.

Henry Wade, Dist. Atty., Ruth E. Plagenhoef, Asst. Dist. Atty., for appellee.

Before CARVER, ALLEN and SHUMPERT, JJ.

SHUMPERT, Justice.

This is an appeal from a conviction for solicitation of capital murder. In six grounds of error appellant contends: the evidence was insufficient to sustain the conviction; a witness was improperly allowed to assert the Fifth Amendment privilege; tapes of conversations were provided to the jury during its deliberation in violation of TEX.CODE CRIM.PROC.ANN. art. 36.28; an objection that a part of the prosecutor's argument was contrary to the charge was mistakenly overruled; and the trial court failed to include a requested jury instruction in the charge. We disagree with appellant's contentions and affirm the conviction.

Appellant met with undercover Department of Public Safety Officer Wayne Padgett on April 8, 1981, and offered him $2500 to kill an individual. At the meeting, he described the man he wanted killed, agreed to pay $2500, and, as an excuse to

avoid any prepayment, described how previous attempts on the man's life had gone awry. Appellant and Padgett arranged another meeting in Houston, but appellant arrived early, and, secretly observing Padgett with another man, left without meeting him. On April 11, appellant again called Padgett to further describe Lawrence Perry McGinnes, the intended victim. On April 20, appellant called off the "hit". Appellant claimed throughout the trial that he had simply played along with Padgett because he suspected him of being in McGinnes' employ. Appellant's elaborate act was supposedly directed toward finding out for whom Padgett worked. The jury chose not to believe appellant's testimony and convicted him of solicitation of capital murder.

■ Appellant initially contends that the evidence was insufficient to sustain the conviction. He contends that, because he never mentioned McGinnes' name in his conversations with Padgett, that he could not be found guilty as charged in the indictment. The indictment in pertinent part states:

> ... Kenneth Lee Chennault ... on or about the 8th day of March ... 1981 ... then and there, with the intent that a capital felony be committed, namely, capital murder, to-wit: the employment of another for the commission of murder in return for the promise of remuneration, the said Defendant did knowingly and intentionally request and attempt to induce another, namely: WINSTON PADGETT, to engage in specific conduct that, under the circumstances surrounding the conduct of WINSTON PADGETT as the Defendant believed them to be, would constitute the aforementioned capital felony, to-wit: the said Defendant knowingly and intentionally requested and attempted to induce WINSTON PADGETT to knowingly and intentionally cause the death of an individual, namely: LAWRENCE PERRY McGINNES, in return for the promise of remuneration in the amount of $2,500.00 by the said Defendant to the said WINSTON PADGETT.

The evidence, primarily consisting of taped conversations between appellant and Padgett, reveals that at a meeting and in a phone call between appellant and Padgett, appellant gave Padgett the following information about the intended victim. He said the intended victim: was about 48 to 50 years old but he looks older; was about six feet tall; had an afro, gray hair and a small moustache and beard like a goatee that's very scraggly; had "pecker" surgery; had open heart surgery; can't stand stress but "he's skiing now;" had got his ass whipped in a bar; has got money and jewelry; hangs out at the Old Hickory Stick regular about three times a week; and drinks scotch and water. Appellant described the intended victim's car as a '76 Lincoln Town Car with usually two or three antennas on the back of it, and described the intended victim's office building. We hold this description sufficient that the jury could have found that appellant "knowingly and intentionally requested and attempted to induce Winston Padgett to knowingly and intentionally cause the death of an individual, namely: Lawrence Perry McGinnes, in return for the promise of remuneration in the amount of $2,500 by the said defendant to the said Winston Padgett." Despite the fact that the intended victim's name was never mentioned, this description is sufficient to positively identify McGinnes. *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Cr.App.1983). Additionally, when the tapes of the conversation between appellant and Padgett were played in court, appellant testified that, in all conversations, he was referring to Lawrence Perry McGinnes as the intended victim. Appellant's first ground of error is overruled.

■ Appellant next contends that the evidence is insufficient to sustain the conviction because the evidence shows that he solicited someone else to hire a third person to murder McGinnes, and that he (appellant) solicited to solicit murder, not that he solicited murder as charged in the indictment. Appellant's contention ignores the tape recorded conversations between him-

self and Padgett which contained direct negotiations between the two. We hold that the evidence was sufficient for the jury to find that appellant was guilty of solicitation of capital murder. *Wilson,* 654 S.W.2d at 471. Appellant's second ground of error is overruled.

■■■■ Appellant next contends that the trial court erred in allowing witness Delores McGinnes to assert her Fifth Amendment privilege. We disagree for several reasons. At trial, the defense attorney on voir dire asked Delores questions to which she, and then her attorney, responded that she invoked the Fifth Amendment privilege. Appellant then offered his version of what the alleged answers, if elicited, would tend to prove. After hearing all of the questions and the proposed testimony, the court excused Delores, upholding her assertion of the privilege.

There was no objection nor any attempt made to show that Delores improperly invoked the Fifth Amendment privilege. There was no demand that the trial court require her to testify; in fact, the defense counsel asked that she be excused after he stated what her testimony would have prove. Additionally, the record does not show that she could have testified to admissible evidence in behalf of appellant without incriminating herself. *Brown v. State,* 500 S.W.2d 653 (Tex.Cr.App.1973). Further, where the witness' refusal to testify on grounds that to do so might incriminate her was on the advice of the witness' attorney, the trial court was not required to make any further determination. *Ross v. State,* 486 S.W.2d 327, 328 (Tex.Cr.App. 1972). Appellant's third ground of error is overruled.

■■■ Appellant contends that the trial court erred in providing the jury tapes of conversations in evidence during its deliberations in the guilt-innocence phase of the trial. He contends that giving the tapes to the jury violated TEX.CODE CRIM.PROC. ANN. art. 36.28 (Vernon 1981) which provides that only under certain circumstances may the jury have testimony from the court reporter's notes read to them. He

argues that, by releasing the tapes to the jury to be played without limitation, the State's case was prejudicially bolstered, and a fair and impartial trial resulted.

We disagree with appellant's contention that these recordings constitute testimony and hold that they constitute exhibits. TEX.CODE CRIM.PROC.ANN. art. 36.25 (Vernon 1981) states, "[t]here shall be furnished to the jury upon its request any exhibits admitted as evidence in the case." In *Bigham v. State,* 141 Tex.Cr.R. 332, 148 S.W.2d 835, 840 (1941), transcribed notes of a conversation which allegedly occurred at the time a bribe was made, admitted without objection as a State's exhibit, were properly furnished to the jury upon request. While the tapes here are oral and not written, we conclude that this case is analogous to *Bigham,* that these tapes do not constitute testimony, and that under § 36.28 they were properly furnished to the jury. Appellant's contention is overruled.

■■■ Appellant next contends that the trial court erred in overruling his objection that part of the prosecutor's argument was contrary to the charge. The court's charge tracked TEX.PENAL CODE ANN. § 15.-04(b), (c) (Vernon 1974). That section provides:

(b) It is an affirmative defense to prosecution under Section 15.02 or 15.03 of this code that under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor countermanded his solicitation or withdrew from the conspiracy before commission of the object offense and took further affirmative action that prevented the commission of the object offense.

(c) Renunciation is not voluntary if it is motivated in whole or in part:

(1) by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the objective; or

(2) by a decision to postpone the criminal conduct until another time or to

transfer the criminal act to another but similar objective or victim.

During final argument on guilt-innocence, the prosecutor argued as follows:

(Prosecutor): And if you feel from hearing all this testimony in this case, from listening to all of the tapes, that he called it off because he does not want Lawrence Perry McGinnes dead, then you will acquit him.

But if you feel from the testimony that he wants to stop the music because number one, he thinks he's been set up, for his own death, or number two; he thinks he has been spotted to the police, then convict him.

MR. TESSMER: Your Honor, I object to that as an argument against the law in that it would only be under the Statute if the possibility of detection had increased and he's arguing to the jury that it wouldn't be voluntary if he did so because he believed that that man was his hired killer, which is not making detection by the police, that's the argument, Your Honor. He's arguing against Your Honor's Charge, on the voluntariness and what is or is not.

THE COURT: Counselor, I believe the Court has properly charged the jury on that matter. I believe the jury is fully capable of applying the evidence to such.

MR. TESSMER: Is my objection overruled?

THE COURT: Overruled.

MR. LOLLAR: Let me restate it one more time, so there is no confusion.

If you find that he stopped the music and called it off because he did not want Lawrence Perry McGinnes dead, then find him not guilty.

If you believe it's for any other purpose under the sun, any other reason under the sun, then find him guilty.

MR. SARGEANT: Your Honor, that's not the charge.

MR. TESSMER: We object again on the same basis.

THE COURT: Objection overruled.

All agree that appellant eventually "called off the hit." Appellant contends that, only if he did so due to a fear of detection by the police or due to a decision to postpone the killing to some later time, would he forfeit the defense of renunciation. He contends that the prosecutor's argument was clearly contrary to the court's charge, an incorrect statement of the law, and that harm to appellant was increased by the trial court's overruling appellant's objection. We disagree.

Defendant initially complains of the argument, "But if you feel from the testimony that he wants to stop the music because number one, he thinks he's been set up, for his own death, or number two, he thinks he's been spotted to the police, then convict him." We hold that being set up for one's own death after the solicitation but before the "hit" constitutes a circumstance not present or apparent at the inception of the course of conduct that makes more difficult the accomplishment of the objective. TEX. PENAL CODE ANN. § 15.04(c)(1) (Vernon 1974). The second part of the sentence similarly falls within the ambit of subsection (c)(1). Being spotted to the police after a solicitation of murder but before the "hit" is a circumstance not present at the inception of the actor's course of conduct that increases the probability of apprehension.

Appellant next complains of the following argument:

If you find that he stopped the music and called it off because he did not want Lawrence Perry McGinnes dead, then find him not guilty.

If you believe it's for any other purpose under the sun, then find him guilty.

Appellant contends that subsections (c)(1) and (2) provide the only ways in which renunciation can be non-voluntary, and that in the second sentence, therefore, the prosecutor interpreted the statute too broadly. We cannot agree.

■ The first sentence of that argument, paraphrased, states that, if appellant changed his mind because he did not want McGinnes dead, there was a voluntary and complete renunciation, the affirmative defense is good, and appellant would be not guilty. The second sentence is simply the

converse of the first. Paraphrased, it states that if the renunciation was for any reason other than that he did not want McGinnes dead, then appellant should be found guilty. We agree with the State that if there was any reason other than that appellant did not want him dead, that if some factor influenced appellant besides a change of heart, the renunciation would not be voluntary within the intent of the statute. Appellant contends that subsections (1) and (2) are exclusive descriptions of ways in which renunciation may not be voluntary. We disagree. The first sentence of section (c) states, "[R]enunciation is not voluntary if it is motivated in whole or in part: ..." The practice commentary to § 15.04 states as follows:

> Subsection (c) limits the renunciation defense to those changes in the actor's purpose that evidence repentence or change of heart. The subsection also enumerates common factors that destroy a renunciation defense. Searcy and Patterson, Practice Commentary, TEX.PENAL CODE ANN. § 15.04 (Vernon 1974).

 We agree with the practice commentary that repentence or a change of heart is required before a renunciation is voluntary within the intent of the statute. We do not believe the legislature intended a renunciation defense to be used in a situation where the intent to kill was still present, but some factor besides those listed in subsection (1) or (2) caused the change. We believe this is a situation in which there was no way for the legislature to think of every possible way for renunciation to be non-voluntary and that it was merely listing some possibilities. We hold that the prosecutor's arguments were not contrary to the court's charge or a misstatement of the law. The trial court correctly overruled the objections. Appellant's contention is overruled.

Finally, appellant contends that the trial court erred in failing to include the following requested jury instruction in the charge.

> You are further instructed that if you believe from the evidence beyond a reasonable doubt that on or about the 8th day of April, 1981, in Dallas County, Texas, the defendant, KENNETH LEE CHENNAULT, committed the acts alleged in the indictment, if he did, but you further find and believe from the evidence or you have a reasonable doubt thereof, that the intended victim was some person other than LAWRENCE PERRY McGINNES, then you will acquit the defendant, KENNETH LEE CHENNAULT, and say by your verdict Not Guilty. (R I 168).

When any defensive theory is raised by the evidence, the trial court must charge the jury on that defensive theory. The issue of the existence of a defense, however, is not submitted to the jury unless evidence is admitted supporting the defense. TEX.PENAL CODE ANN. § 2.03(c) (Vernon 1974); *Green v. State*, 566 S.W.2d 578, 584 (Tex. Cr.App.1978). We find no evidence that the intended victim was anyone other than Lawrence Perry McGinnes. Appellant testified that he was referring to McGinnes in the taped conversations between himself and Padgett. Appellant's defense was denying soliciting Winston Padgett to commit capital murder, not that he solicited to kill someone else. This ground of error is overruled.

The conviction is affirmed.