624 A.2d 144

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert FOSTER, Appellant.**

Superior Court of Pennsylvania.

Argued March 10, 1992.

Filed April 20, 1993.

427 A.2d 203 (1981) (Subject matter jurisdiction may be raised *sua sponte* by a court).

Gary Lysaght, Harrisburg, for appellant.

William T. Tully, Asst. Dist. Atty., Harrisburg, for Com.

Before POPOVICH, HUDOCK and HESTER, JJ.

HUDOCK, Judge.

This is an appeal from the judgment of sentence imposed

upon Appellant after a jury convicted him of rape[1] and involuntary deviate sexual intercourse.[2] Timely filed post-verdict motions were denied by the trial court, and Appellant was sentenced to an aggregate term of incarceration of twelve to twenty-four years.[3] A timely filed motion to modify sentence was also denied. This direct appeal followed. We remand with instructions.

The relevant facts, as summarized by the trial court, are as follows:

On October 6, 1988, at approximately 1:15 A.M., Officer Kenneth A. Bittner of the Harrisburg Police Department was called to 2039 Rudy Road, Harrisburg. (N.T. 26–27). Officer Bittner entered the basement area, observed a large pool of blood on the floor and found the body of Carla Childs lying naked on a sofa bed. (N.T. 27). Forensic pathologist Cheryl L. Murray conducted an autopsy on October 6, 1988 and concluded that Ms. Childs died as the result of head injuries. (N.T. 58). The pathologist also observed a laceration in the anal region. (N.T. 51). Dr. Murray further found a small plastic fragment in the victim's vagina. (N.T. 53).

During the early evening hours of October 5, 1988, Ms. Childs was at Dinger's Bar located at Market and Evergreen Streets in Harrisburg with the defendant, Robert Foster. (N.T. 31). She left the bar later that evening with Foster. (N.T. 32). The couple returned to the home of Clifford McLamb, the owner of 2039 Rudy Road. (N.T. 76). McLamb stated that he was present when the couple returned home on the night of the incident and that Ms. Childs had two other male visitors before he left later that evening to take care of some family business. (N.T. 77). Jack Buie, a former boyfriend of Childs, left before McLamb but Ulysses Boulware was at the residence with

1. 18 Pa.C.S. § 3121.

2. 18 Pa.C.S. § 3123.

3. Appellant was also charged with criminal homicide, 18 Pa.C.S. § 2501. Because the jury was unable to reach a verdict on this charge, the trial court declared a mistrial.

Foster and Childs when McLamb departed on his errands. (N.T. 77).

Detective Robert H. Fegan interviewed Foster, Boulware and Buie. It was ascertained that Buie gave some money to Childs and he returned to her residence to inquire about her use of this money on the night of the incident. (N.T. 119). Boulware came to this residence to collect some money borrowed by Childs in preparation for his trip to Texas. (N.T. 121). On October 7, 1988, Detective Fegan had a detailed interview with Robert Foster. (N.T. 124). Foster gave the police, duirng [sic] his statement, approximately ten different versions of the activities of the night of the incident. (N.T. 125).

Trial Court Opinion at pp. 1–2.

On appeal, the following issues are raised by Appellant:

A. Whether the convictions for rape and involuntary deviate sexual intercourse must be overturned, the charges dismissed and Appellant discharged because the Commonwealth failed to exercise due diligence in bringing Appellant to trial within 365 days as required by Pennsylvania Rule of Criminal Procedure 1100?

B. Whether the suppression court erred in refusing to bar Appellant's statements to police as violative of his rights under the Pennsylvania and United States Constitutions where they were obtained during the course of a continuous 13–hour interrogation, Appellant was the prime suspect, he reasonably believed he was in custody and the police admitted failing to mirandize him until some 2 hours into the interrogation?

C. Whether the trial court erred in permitting the jury, during deliberations, to have possession of and view a videotape reenactment made by the police with Appellant of his attempted sex acts with the victim on the night in question, which videotape was the equivalent of a confession?

Appellant's Brief at p. 3.

Initially, Appellant asserts that the lower court should have dismissed the charges against him because the Commonwealth

violated Pa.R.Crim.P. 1100 by not bringing him to trial within 365 days of the filing of the criminal complaint. We disagree. Further, we hereby adopt the hearing court's well-reasoned memorandum opinion addressing this issue as our own for purposes of *allocatur*.[4]

■ Next, Appellant asserts that the lower court erred in failing to suppress statements which Appellant made to police prior to being advised of his *Miranda* rights. This contention is without merit.

Our standard of review when assessing the propriety of a suppression court's ruling is well settled:

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Fromal*, 392 Pa.Super. 100, 111, 572 A.2d 711, 717 (1990) (citations omitted).

In the present case, a review of the testimony at Appellant's suppression hearing reveals the following: Harrisburg police learned that Appellant was one of several individuals who had

---

**4.** We would add that Appellant concedes that "[a]s framed by the Rule 1100 court, the critical timeframe is from July 28, 1989 to February 4, 1990." Brief for Appellant at 12.

We have examined the record and conclude that the entire time period contested by the Appellant was attributable to his efforts to seek approval of and his ambivalence over ultimately having DNA testing performed. As such, the time lapse between July of 1989 and February of 1990 is assignable to the Appellant with the lower court's grant of his request for DNA testing and results in this period being excluded from calculations for Rule 1100 purposes. Accordingly, Appellant's request and the subsequent grant by the lower court of his request to have DNA testing conducted renders his allegation of a Rule 1100 violation meritless.

been with the victim on the evening of her death. On October 6, 1988, Detective Robert Fegan went to Appellant's residence and spoke with Appellant's girlfriend. Appellant then telephoned Detective Fegan and left a message on his answering machine informing the officer that he could be reached at 9–B Hall Manor if the officer wished to speak with him. The following day, Detective Fegan and Lieutenant Goshert went to 9–B Hall Manor. Once there, the officers spoke with Appellant for a few minutes. The officers asked Appellant for his assistance in their investigation into the victim's death. Appellant then agreed to comply with the officers' request that he come with them to the police station and make a statement. At approximately 5:00 p.m., the officers and Appellant arrived at the police station. Detective Fegan took Appellant to an interview room where he asked Appellant what he knew about the victim's activity on the evening of October 5. No other police officers were present in the room.

Appellant related several conflicting statements regarding his knowledge of the victim's activities on the evening of her death. Approximately one hour and forty-five minutes after the interview had begun, the officer and Appellant took a break and went across the street from the police station to purchase soft drinks. When they returned to the station, Appellant agreed to submit to a polygraph examination to verify his statement that he had nothing to do with the victim's injuries. After Appellant signed a consent form to take the test, which contained a waiver of his right to have an attorney present, the test began. Appellant proceeded to give several versions of his activities and those of the victim on the night in question, ultimately admitting to having vaginal and anal intercourse with the victim after she sustained the head injuries which caused her death.

In assessing the merits of Appellant's claim, it is necessary that we first determine whether he was in custody when he made the statements which he argues should have been suppressed, thereby requiring that he be advised of his *Miranda* rights. As our Supreme Court stated in *Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311 (1983):

The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

*Id.* at 577, 459 A.2d at 314 (citations omitted).

Further, as we stated in *Commonwealth v. Fento,* 363 Pa.Super. 488, 526 A.2d 784 (1987):

*Miranda* warnings are necessary only on those occasions when a suspect is undergoing 'custodial interrogation.'

\*     \*     \*     \*     \*     \*

*Miranda* warnings were designed to shield an accused from the coercive aspects of custodial interrogations, i.e., from incommunicado interrogation in a police-dominated atmosphere, which resulted in self-incriminating statements without full warnings on constitutional rights.

*Id.* at 492–93, 526 A.2d at 786–87 (citations omitted).

Our review of the testimony taken at Appellant's suppression hearing provides us with no basis to conclude that Appellant was undergoing "custodial interrogation" at the police station before being advised of his *Miranda* rights. The police were aware of several individuals who had been seen with the victim on the night of her death. Detective Fegan stated that Appellant was a "potential witness, somebody that could help us establish what happened, who may have been involved, to further the investigation." (N.T. 5/29/90, at p. 35). Appellant was very cooperative with the police. After Detective Fegan visited Appellant's residence and did not find him there, Appellant telephoned him and left a message on his answering machine informing him of where he could be reached. The police went to this address. Appellant then agreed to go "to the police station, make a statement, and help [the officers] out any way he could." (N.T. 5/29/90, at pp. 35–36). The officers did not "physically deprive [Appellant] of his freedom." *Chacko, supra.* Detective Fegan stated that he was fairly certain that he had told Appellant at that time that he "wasn't under arrest or in custody, that we would take his

statement and he would be free to leave." (N.T. 5/29/90 at pp. 49–50).

Moreover, a review of the suppression hearing testimony reveals that Appellant was not questioned in a coercive atmosphere. When they arrived at the police station, Appellant and Detective Fegan went to an interview room where the pair spoke alone for approximately one hour and forty-five minutes. They then took a break to go across the street from the police station for soft drinks. When they returned to the station, Detective Fegan advised Appellant of his *Miranda* rights. Appellant waived these rights, and Detective Fegan proceeded to conduct a polygraph examination of him. It was during this examination that Appellant admitted having vaginal and anal intercourse with the victim. We find no error in the suppression court's decision.

Appellant's final claim on appeal is that the trial court committed reversible error by allowing the jurors to take with them during deliberations a videotape made by police of the Appellant reenacting the sexual activity which he engaged in with the victim on the night in question. This videotaped reenactment, Appellant asserts,

> was tantamount to a confession, [and] permitting the jury to view it during deliberations violated Pennsylvania Rule of Criminal Procedure 1114 on the prohibition of written confessions in the jury room[.] [T]he jury ineluctably placed undue emphasis on [the videotape's contents] rather than relying on their collective recollection of the trial testimony and evidence, and Appellant was seriously prejudiced as a result.

Brief for Appellant at 23–24.[5] We agree that Rule 1114 was violated.

5. It is the Commonwealth's contention that counsel for Appellant "never specifically objected at trial to the videotaped reenactment being sent to the jury room ..." and, as such, the *basis* for the claim of a Pa.R.Crim.P. 1114 violation had not been preserved for appellate review. *See* Brief for Commonwealth at 35–37. Our examination of the record is to the contrary.

In an exchange between Appellant's counsel and the trial court, the preservation of the Rule 1114 *issue* was discussed as follows:

Following questioning at the police station, Appellant, Lieutenant Goshert, and Detective Fegan went to the house where the victim's body was found. Once there, Detective Fegan requested that Appellant reenact his actions on the night of the victim's death, including the sex acts which Appellant performed on the victim. Appellant complied with this request. The officers recorded this reenactment on videotape.

At trial, the court admitted the videotape as an exhibit, and the Commonwealth played the videotape for the jury. After retiring to deliberate, however, the jury requested that the videotape be sent to the jury room. Over objection by Appellant's counsel, the trial judge granted this request. After

[APPELLANT'S COUNSEL]: Your Honor, just to bring the record up to date, I think earlier there were questions which were not entered into the record. And those questions were—I forget what time that the jury had presented those questions to the Court, but they requested that they be provided with a copy of the videotaped confession/re-enactment of Robert Foster and also that they be provided with a tape of the 911 call and a transcription of that tape. I did not object to the admission of the tape of the 911 call being sent up or the transcription of that. However, *I did object to the Court at that particular time about the jury being permitted to review that videotaped, I don't know how the Court wants to paraphrase it but it's videotape/confession/re-enactment. I did object to that, Your Honor.*

THE COURT: You did. And I indicated, and we all agreed, that we would put your—we didn't have the reporter there at that time. And I agreed that we'd give you an opportunity to put that on the record at a subsequent time. We'll note your objection. I overruled it at that time, and we'll give you an exception with regard to the Court's ruling.

(N.T. 2/15/91 at p. 421).

It is evident from the notes of trial that Appellant's counsel stated the *basis* for his objection to the jury having access to the videotape as a "confession" by the accused. This clear objection on the record was sufficient to alert the trial court that counsel was not in favor of the jurors having access to a "videotape/confession/re-enactment" incriminating to his client. *See Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349, 351 (1977). *Accord Commonwealth v. Wilson*, 485 Pa. 409, 402 A.2d 1027, 1029 (1979); *Commonwealth v. Martin*, 465 Pa. 134, 348 A.2d 391, 411 n. 24 (1975), cert. den. 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976); *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572, 575 (1973).

We conclude that, under established case law, the Appellant's objection to the jury's access to the videotaped confession *placed the court on notice* of the procedural ground for the contention sufficient to preserve the issue for our review. *See Wilson, supra; Mulgrew, supra; Martin, supra, Canales, supra.*

deliberations, the jury found Appellant guilty of rape and involuntary deviate sexual intercourse, but could not reach a verdict on the homicide charge (murder of the second/third degree or involuntary manslaughter), and the trial court granted a mistrial as a result thereof.

Appellant urges us to equate *videotaped confessions* with *written* ones, reading their proscription into Pa.R.Crim.P. 1114, which provides:

> Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, *nor a copy of any written confession by the defendant,* nor a copy of the information or indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.

Pa.R.Crim.P. 1114 (Purdon 1989) (emphasis added).

It is tempting to accept Appellant's argument in light of technological advances which have occurred since the Supreme Court fashioned the rule. To do so, however, would violate the well-settled rule of statutory construction that the letter of the law cannot be ignored. Still, we are not prevented from considering the reasons underlying the prohibition in Rule 1114 regarding trial transcripts, written confessions, and copies of informations and indictments in the jury room when reviewing the discretion exercised by the court with regard to other exhibits.

■ Because videotaped confessions are not among the items proscribed expressly by Rule 1114, the decision whether they may be sent out with the jury is for the trial court. *See Commonwealth v. Riggins,* 478 Pa. 222, 232–33, 386 A.2d 520, 525 (1978) ("[since exhibit was] not among the items which Rule 1114 specifically forbids the jury to have during deliberations ... the only question remaining is whether the court abused its discretion by doing so...."). In reviewing the trial court's decision, we must employ an abuse of discretion standard:

> Decisions as to what exhibits may be taken out by the jury are within the sound discretion of the trial court and will not

be reversed absent an abuse of that discretion. To establish an abuse of discretion, appellant must show that the trial court disregarded or misapplied the law or that "the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record. . . ."

*Commonwealth v. Akers*, 392 Pa.Super. 170, 189, 572 A.2d 746, 755 (1990) (citations omitted).

Prior to the time Rule 1114 was amended to specifically preclude written confessions from being taken to the jury room, our Supreme Court expressed concern that physical presence of the confession in the jury room would lead to overemphasis of that document by the jury at the expense of evidence presented only upon the witness stand. A review of such case law follows.

In *Commonwealth v. Ravenell*, 448 Pa. 162, 292 A.2d 365 (1972) our Supreme Court, although allowing a written confession to go to the jury room under the specific facts before it, nevertheless stated:

> . . . we must caution that such procedure should be carefully employed and is not permissible when under all the circumstances it affords this portion of the testimony undue emphasis.

*Id.* at 172, 292 A.2d at 370. The Supreme Court in *Ravenell* found that the trial court did not abuse its discretion in deciding to send the confession out with the jury during deliberations because "it was a long and complicated trial and the confession contained many confusing references to the participants in the fight by nickname[.]" *Id.* *See also Commonwealth v. Moore*, 443 Pa. 364, 279 A.2d 179 (1971) (trial court did not abuse its discretion in allowing a written confession to be sent out with jury were it was complicated and because it contained references to other participants in the attack upon the victim by both name and nickname).

In *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973), the defendant made an oral confession to the investigating officer, but said that he would not sign anything or admit anything in the presence of anyone else. After the

interview was completed, the officer summarized the confession in his notes but, due to the defendant's previous statement, did not have the defendant review or sign the notes. At trial, and over the objection of defense counsel, the trial court admitted the notes as an exhibit and also permitted them to be sent out with the jury. Our Supreme Court found that the trial court erred in admitting the notes under the past recollection recorded exception to the hearsay rule. The court then stated that, because the notes were not properly admitted into evidence, they could not qualify as an exhibit and were thus improperly sent out with the jury as an aid in deliberations. In reference to Rule 1114, the court stated that the officer's notes were nothing more than his courtroom testimony reduced to writing and therefore equivalent to his trial testimony; an item specifically prohibited from being sent out with the jury by operation of the rule. In direct contradiction to the officer's testimony, at trial the defendant claimed that he never made any oral statement. Our Supreme Court stated that "we cannot say that the issue of credibility between the [defendant] and the police officer was not affected by the physical embodiment of the officer's notes which were given to the jury to consider in their deliberation." *Id.* at 428, 311 A.2d at 575.

As can be seen by the above review of case law, the overriding concern regarding the allowance of written confessions to go out with the jury was that the physical presence of the item within the jury room may cause it to be emphasized over other testimony the jurors heard only from the witness stand, and they must, of necessity, rely on memory of it during the deliberation process. In June, 1974, Rule 1114 was amended to include copies of written confessions in its list of prohibited items. Clearly this same possibility of overemphasis also exists when the jury requests to review a videotaped reenactment of the crimes charged—a re-enactment which by both word and visible actions constitutes a confession. Indeed, the possibility for over-emphasis is even greater when a jury both sees and hears a criminal defendant recreate the crimes he committed. Thus, when the jury reviews (and

possibly re-reviews) such a confession, it is naive to think that they will not give the videotape the very undue influence long condemned by our jurisprudence.

Throughout its brief, the Commonwealth characterizes the videotaped re-enactment of the crimes charged as merely voluntary statements made by Appellant. Our own review of the videotape convinces us that Appellant confessed to these crimes; on the tape Appellant both physically demonstrates and orally explains how he placed the victim on a bed, undressed her, and then proceeded to perform the acts in question upon her. Even if we were to characterize the videotape as only statements made by Appellant, more recent case law of this Commonwealth has expressed the same concerns expressed prior to the amendment of Rule 1114.

In *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974), the Commonwealth called a witness who was to testify that the defendant was involved in the crime at issue. When the witness took the stand, however, his testimony completely exonerated the defendant. Pleading surprise, the Commonwealth was permitted to impeach the witness through the use of a prior inconsistent statement. At the trial's completion, the written statement was allowed to go out with the jury as an exhibit for impeachment purposes, despite defense counsel's strenuous objection. While recognizing that the trial court is afforded discretion in determining when an exhibit should go out with the jury, our Supreme Court noted that "this discretion should be carefully exercised." *Id.* at 566, 322 A.2d at 131. Upon reviewing the circumstances then before them, the Supreme Court found that, although the trial court instructed the jury to consider the exhibit only for impeachment purposes,

the danger still persisted it might be considered as substantive evidence and in a case such as this, where the testimony as to guilt was highly conflicting could prejudice the defendant unduly. Additionally, under the circumstances, it afforded the jury the opportunity of placing greater emphasis

on what was included in the statement rather than what was legally permitted.

*Id.*

In *Commonwealth v. Dennison,* 254 Pa.Super. 284, 385 A.2d 1021 (1978), the defendant in a criminal action for failing to support a bastard child, claimed that the trial court committed prejudicial error in permitting the jury to take his written confession to the jury room. The trial court recognized the proscription of Rule 1114, but ruled that the written statement by the defendant was a "love letter" and not a confession. On appeal, this Court recognized that the contents of the letter were subject to different interpretations. While obviously a love letter, the question arose as to whether it implied more, namely a confession of paternity. Finding that such an interpretation was plausible, this Court concluded that "[i]n view of the provision in Rule 1114, and the possibility the jury might conclude it was a confession, the lower court committed prejudicial error in permitting the jury to have possession of it during its deliberation." *Id.* at 287, 385 A.2d at 1023.

In *Commonwealth v. Riggins,* 478 Pa. 222, 386 A.2d 520 (1978), the defendant claimed that the trial court erred in permitting a napkin, on which a police officer had recorded one of the victim's dying declarations, to go out with the jury during deliberations. Our Supreme Court stated that, because the napkin was not among the items which Rule 1114 specifically forbids the jury from having during deliberations, that is, a transcript of trial testimony, a written confession, or a copy of the information or indictment, or was not inadmissible as evidence generally, the only question remaining was whether the trial court abused its discretion because "by so doing that testimony was given undue emphasis." *Id.* at 233, 386 A.2d at 525. The court further stated that "[i]n assessing the trial court's exercise of discretion in this regard, it is necessary to focus upon the significance of this piece of evidence in relationship to the issues raised during the trial." *Id.* Finding that the notes on the napkin were consistent with live testimony from other witnesses that the victim was heard to state before expiring that the defendant caused her injuries,

and that the truthfulness of this testimony was the real issue in the case, the Supreme Court found that "[t]he physical presence of the napkin could in no way lend credence to the verity of the victim's charges." *Id.* at 233, 386 A.2d at 526. Thus, "since any emphasis that may have resulted from the trial court's ruling related to an issue not seriously disputed," the court did not find that the trial court abused its discretion in permitting the napkin to go to the jury. *Id.*

In *Commonwealth v. Hall,* 523 Pa. 75, 565 A.2d 144 (1989), the defendant argued that the trial court erred in allowing the trial exhibits of written and tape recorded statements of witnesses to be sent out with the jury. As in the present case, the defendant asserted a violation of Rule 1114. Although the defendant conceded that these exhibits were not prohibited by rule, he argued that "the practice of allowing written and tape recorded statements to go out with the jury during its deliberations in general, could be used to circumvent the rule's prohibition against trial transcripts by unscrupulous individuals who could manufacture such evidence specifically for trial." *Id.* at 83, 565 A.2d at 148. While the Supreme Court found that the defendant pointed out "an obvious hazard of the rule," it found no evidence of record to support such a finding in the case before it, and, therefore, found that the trial court did not abuse its discretion in permitting the written and tape recorded statements to go to the jury. In a footnote, the Court reiterated its statement in *Commonwealth v. Baker,* 466 Pa. 382, 398, 353 A.2d 406, 414 (1976), to the effect that "we suggest in the future that this practice should not be followed." *Commonwealth v. Hall,* 523 Pa. at 83, n. 11, 565 A.2d at 148, n. 11.

Finally, in *Commonwealth v. Taylor,* 408 Pa.Super. 121, 596 A.2d 222 (1991), the defendant alleged that he was entitled to a new trial because the trial court erred in refusing a jury request, after deliberation had begun, to listen to a tape recorded conversation of a drug exchange between him and a confidential informant. The defendant claimed that the trial court abused its discretion by *not* granting the request because neither his own counsel or the attorney for the Com-

monwealth objected to the request. The trial court denied the request on the basis that it "feared replay of the tape would tend to emphasize the recorded statements over other evidence in the case and would therefore be improper." *Id.* at 125, 596 A.2d at 223–24, citing the trial court opinion at p. 3. A panel of this Court found that the statement by the trial court, coupled with the trial court's indication that the quality of the production was poor, were sufficient reasons to reject the jury's request.

Thus, in cases which do not involve actual written confessions, the courts of this Commonwealth have continued to repeat the caution about undue emphasis that our Supreme Court first expressed in cases pre-dating the amendment of Rule 1114. While argument can be made that Rule 1114 should be further amended to encompass all mediums upon which a criminal defendant's confession can be recorded, such argument must be addressed to the Supreme Court which has exclusive rulemaking authority. On the record in the present case, however, we hold that the trial court abused its discretion in permitting the videotape to be given to the jury, upon their request, after deliberation had begun. There can be no doubt in the present case, unlike *Commonwealth v. Riggins, supra,* that this piece of evidence was directly related to an issue in the case, that is whether Appellant committed the crimes with which he was charged.[6]

The Commonwealth contends that, even assuming error, it was harmless at worst. In support, the Commonwealth asserts that in both opening and closing statements, Appellant's

---

**6.** In both *Commonwealth v. Ravenell, supra,* and *Commonwealth v. Moore, supra,* the Supreme Court allowed the written confessions to go to the jury because the trial was long and complicated or because the confession itself was confusing. In contrast, upon review of the present case, we find that the jury's request for the videotape does not appear of record. Hence, we are without information upon which to judge the need for the videotaped confession in the case *sub judice.*

Both Appellant and the Commonwealth cite to decisions in our sister jurisdictions in support of their respective arguments. While these cases are instructive on the interplay of case law, statutes, and rules of criminal procedure in *those* jurisdictions, we do not find them persuasive given our case law and Rule 1114. We are satisfied that sufficient Pennsylvania precedent supports our decision on this issue.

counsel acknowledged Appellant's guilt of the sex crimes but not the homicide. This being so, the Commonwealth reasons, the fact that the jury may have replayed a videotaped confession of what Appellant admitted in open court, through his counsel, could not have prejudiced him. (Since a mistrial was declared because of jury deadlock on the homicide charge, any error as to that charge was rendered moot.) The argument has appeal.

Since the opening and closing remarks of Appellant's counsel are not part of the present record, however, we cannot make that determination. We therefore remand for the purpose of having the trial court order the transcription of the opening and closing remarks of Appellant's counsel. If the trial court finds that counsel did unequivocally acknowledge Appellant's guilt of both the rape and involuntary deviate sexual intercourse charges, the judgment of sentence is affirmed. If the court determines that the record does not show an unequivocal admission of guilt as to *both* sex charges, then the judgment of sentence is reversed and a new trial is awarded. Jurisdiction relinquished.

POPOVICH, J., files a concurring and dissenting opinion.

POPOVICH, Judge, concurring and dissenting.

While I join in the majority's resolution of appellant's first two assertions of error, I respectfully dissent from their determination that the trial court erred when, in violation of Pa.R.Crim.P. 1114, it permitted appellant's videotaped confession to be shown to the jury, upon their request, after deliberations had begun.

The majority concludes that the lower court committed reversible error by allowing the jurors to take with them during deliberations a videotape made by police of the appellant reenacting the sexual activity which he engaged in with the victim on the night in question. Appellant asserts (and the majority agrees) that the videotaped reenactment,

> was tantamount to a confession, [and] permitting the jury to view it during deliberations violated Pennsylvania Rule of

Criminal Procedure 1114 on the prohibition of *written* con-
fessions in the jury room[.] [T]he jury ineluctably placed
undue emphasis on [the videotape's contents] rather than
relying on their collective recollection of the trial testimony
and evidence, and Appellant was seriously prejudiced as a
result. (Emphasis added.)

Brief for Appellant at 23–24.

Instantly, appellant was taken to the scene where the victim
was found and was asked to reenact his actions on the night of
the victim's death, including the sex acts which appellant
performed on the victim. Appellant complied with this re-
quest, and the police recorded this reenactment on videotape.

At trial, the court admitted the videotape as an exhibit, and
the Commonwealth played the videotape for the jury. After
retiring to deliberate, the jury requested that the videotape be
sent to the jury room. Over objection by appellant's counsel,
the trial judge granted this request. After deliberations, the
jury found appellant guilty of rape and involuntary deviate
sexual intercourse but could not reach a verdict on the homi-
cide charge (murder of the second/third degree or involuntary
manslaughter), and the trial court granted a mistrial as a
result thereof. Trial Transcript at 435.

Appellant urges this court to equate *videotaped confessions*
with *written* ones, reading their proscription into Pa.R.Crim.P.
1114, which provides:

Upon retiring for deliberations, the jury shall not be permit-
ted to have a transcript of any trial testimony, *nor a copy of
any written confession by the defendant,* nor a copy of the
information or indictment. Otherwise, upon retiring, the
jury may take with it such exhibits as the trial judge deems
proper.

Pa.R.Crim.P. 1114 (emphasis added).

It is not our province, however, to rewrite this rule. Our
supreme court's having stated specifically that *written* confes-
sions are prohibited, we may not include, by inference, *video-
taped* or audio-taped confessions. *See Commonwealth v. Rig-
gins,* 478 Pa. 222, 233, 386 A.2d 520, 525 (1978) (since exhibit

was not specifically prohibited by Rule 1114, only question was whether exhibit was unduly prejudicial); *Commonwealth v. Hall*, 523 Pa. 75, 83, 565 A.2d 144, 148 (1989). Certainly, when the Rules Committee drafted the amendment to Pa.R.Crim.P. 1114, in 1974, the technology for recording oral statements and video images was available, albeit not as commonplace as it is today. However, the Rules Committee saw fit to exclude specifically from the jury's possession *only* trial transcripts, *written* confessions and copies of the information or indictment.

I am convinced the Rules Committee expressly excluded those written recordings of a person's statements, i.e., trial transcripts and written confessions, because their character is markedly different from videotaped confessions (and oral confessions). Written confessions, unlike videotape confessions, are cold and faceless. However, while viewing a videotaped statement, the jury is able to view the witness' demeanor and hear his or her personal account of the events. Thus, the jury is better able to assess the veracity of the content of the videotape than of a written confession. Moreover, this same argument would also ring true (to a somewhat lesser degree) for taped oral confessions, where the defendant expresses his or her personal perceptions. Thus, the jurors would be able to hear the defendant's voice and assess the veracity of the statement in much the same manner as they assess testimony at trial. This is especially true when one considers that a written confession is often not a verbatim statement but rather is a summary of the event prepared by police officers and given to the suspect for his perusal and signature.

In *Hall*, 565 A.2d at 148, our supreme court was presented with the question of whether the trial court erred in allowing written and tape recorded statements of two witnesses to be sent out with the jury. The defendant therein conceded that Pa.R.Crim.P. 1114 did not specifically prohibit the jury from possessing such exhibits but argued that such exhibits could be manufactured by unscrupulous prosecutors and used to avoid the prohibition of the jury's possession of trial transcripts during its deliberations. Our supreme court found no

evidence of such behavior and also determined that the trial court did not abuse its discretion in permitting those exhibits to go out with the jury. *Hall,* 565 A.2d at 148. However, our high court, in a footnote, stated, "we suggest in the future that this practice should not be followed." *Hall,* 565 A.2d at 148 n. 11.

Although our supreme court in *Hall, supra,* looked upon providing the jury with the written and taped statements with a jaundiced eye, the court did not take that opportunity to equate those exhibits with those expressly excluded by Pa. R.Crim.P. 1114. I note that had our high court desired to expand the perimeters of Pa.R.Crim.P. 1114, it would have done so in *Hall, supra.* Yet, the justices reaffirmed that it is within the *discretion of the trial judge to permit exhibits, other than those specifically prohibited by the rule, to be sent out with the jury.*

Since videotaped confessions are not among the items proscribed expressly by Rule 1114, the decision whether they may be sent out with the jury is for the trial court. *See Commonwealth v. Riggins,* 478 Pa. 222, 232–33, 386 A.2d 520, 525 (1978) ("[since exhibit was] not among the items which Rule 1114 specifically forbids the jury to have during deliberations ... the only question remaining is whether the court abused its discretion by doing so...."). As we stated in *Commonwealth v. Akers,* 392 Pa.Super. 170, 572 A.2d 746 (1990):

> Decisions as to what exhibits may be taken out by the jury are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. To establish an abuse of discretion, appellant must show that the trial court disregarded or misapplied the law or that 'the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record....'

*Id.* at 189, 572 A.2d at 755 (citations omitted).

Here, we have no basis to conclude, from the record before us, that the lower court abused its discretion by allowing the jury possession of this exhibit which was properly admitted into evidence. *Cf. Commonwealth v. Sparks,* 351 Pa.Super.

320, 328, 505 A.2d 1002, 1006 (1986) ("[exhibits] which were released [to the jury during deliberations] were relevant, admitted into evidence, and requested by the jury. As such, the possibility that the court's decision would prejudice appellant was at best minimal.") The videotape was certainly relevant to the issues *sub judice*, and I do not believe it was unduly prejudicial.

The majority concludes that appellant was unduly prejudiced when the court permitted the jury to view the videotaped confession during its deliberations because the jury may have overemphasized the importance of this exhibit relative to the other evidence presented. Obviously, the videotaped confession is "prejudicial" to appellant's defense, i.e., the video implicates appellant. However, it does not automatically follow that permitting the jury to view the video exhibit during deliberations prevents the jury from rendering a fair and true verdict. I am convinced the jury was capable of viewing the videotape without placing undue importance upon it, as evidenced by their inability to reach a verdict on the murder charge. Moreover, taken to its logical conclusion, the majority's reasoning would prohibit a jury from viewing, during its deliberations, a video tape of a defendant *actually committing the crime* for which he is on trial. Certainly, the jury should be permitted to review such an exhibit during its deliberation. See *Reed v. Texas,* 794 S.W.2d 806 (Tex.Crim.App.1990) (trial court would have committed error had it not granted the jury's request to view, during deliberations, a videotape of the defendant committing the misdemeanor offense of obstructing a passageway); *Chennault v. Texas,* 667 S.W.2d 299 (Tex. Crim.App.1984) (audio tapes of defendant soliciting undercover officer to murder another individual were exhibits such that they could be released to the jury and replayed without limitation); *State v. Fried,* 92 N.M. 202, 585 P.2d 647 (1978) (same).

I note that my conclusion today is consistent with those of a majority of the jurisdictions which have addressed the issue of whether taped confessions may go out with the jury. *See, e.g., Ingram v. State,* 547 N.E.2d 823 (Ind.1989) (trial court did not

abuse its discretion in replaying videotaped confession, in the court's presence, during jury deliberations), *State v. Fellows,* 47 Ohio App.2d 154, 352 N.E.2d 631 (1975), *overruled on other grounds in State v. Walker,* 53 Ohio St.2d 192, 374 N.E.2d 132 (1978) (trial court did not err in allowing jury to review videotape of defendant in which police officers made conclusory remarks), *State v. Clark,* 38 Ohio St.3d 252, 527 N.E.2d 844 (1988), *State v. Barbo,* 339 N.W.2d 905 (Minn.1983), *State v. Evans,* 639 S.W.2d 792 (Mo.1982), *Hampton v. State,* 569 P.2d 138 (Alaska 1977), *People v. Walker,* 150 Cal.App.2d 594, 310 P.2d 110 (1957), *State v. Reyes,* 209 Or. 595, 308 P.2d 182 (1957), *State v. Triplett,* 248 Iowa 339, 79 N.W.2d 391 (1956) (audio recording of confession properly allowed in jury's possession during deliberations), *State v. Halvorson,* 346 N.W.2d 704 (N.D.1984), *Chennault v. State,* 667 S.W.2d 299 (Tex.Crim. App.1984), *State v. Poulos,* 230 Kan. 512, 639 P.2d 477 (1982), *State v. Fried,* 92 N.M. 202, 585 P.2d 647 (1978) (audio recording of incriminating statements permitted in jury's possession during deliberations), *Reed v. Texas,* 794 S.W.2d 806 (Tex.Crim.App.1990) (trial court would have committed error had it not granted jury's request to view, during deliberations, a videotape of defendant committing offense with which he was charged).[1]

Since I am convinced that it was not error to permit the jurors to view the videotape during their deliberations, I do not believe appellant is entitled to a new trial, nor do I believe it is necessary to review his counsel's open and closing remarks for admission of guilt as to the rape and involuntary deviate sexual intercourse charges.

---

1. *But see, Franklin v. State of Wisconsin,* 74 Wis.2d 717, 247 N.W.2d 721, 725 (1976) (allowing jury to have tape recording of confession in the jury room "presents the danger of overemphasis of the confession relative to testimony given from the witness stand."), *State of New Mexico v. Ross,* 85 N.M. 176, 510 P.2d 109, 111 (1973) ("Playing [audiotape of defendant making incriminating statements] ... to the jury was error because it gave undue prominence to the recorded testimony.").