COMMONWEALTH of Pennsylvania, Appellee,

v.

**Joseph MORTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 13, 2001.

Filed April 17, 2001.

---

M. Susan Ruffner, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Franico L. Nepa, Asst. Dist. Atty.,Pittsburgh, for Com., appellee.

Before JOHNSON, HUDOCK and HESTER, JJ.

HESTER, Judge:

¶ 1 Appellant, Joseph Morton, was convicted of second-degree murder in connection with the May 21, 1982 death of sixteen-year-old Marcia Jones. He was sentenced to life imprisonment. We reject Appellant's allegations of error and affirm.

¶ 2 On May 22, 1982, police were dispatched to the Mount Washington section of Pittsburgh, where a man had discovered the partially-buried body of Marcia Jones. The victim was discovered in a shallow grave, which had been freshly dug. Her shirt and bra had been pulled up over her breasts, and she was unclothed from the waist down. A belt with a missing buckle was located under her body. In the surrounding area, police discovered the missing belt buckle, tennis shoes, blue jeans, underpants, and a recently-smoked cigarette.

¶ 3 The autopsy revealed the victim had multiple wounds on her face and head, there were contusions in her anus and vagina, she had been strangled, and there were five stab wounds to her neck.

¶ 4 The forensic pathologist who performed the autopsy indicated the following. Either a fist or blunt object caused the wounds on the victim's face and head. The marks around Ms. Jones's neck were consistent with her having been strangled with the belt discovered under her body. The victim also had abrasions on her back that were consistent with her having been dragged along the ground. A stick rather than a penis was the more likely cause of the contusions in the anus and vagina.

¶ 5 The victim was last seen alive in the late evening hours of May 21, 1982, with two white males in Grandview Park, which is located in Mount Washington. Her murder remained unsolved for sixteen years. On May 27, 1998, police received

information that Appellant had been involved. At approximately 4:30 p.m. that day, Homicide Detectives Terrance O'Leary and James Fazio went to Appellant's home and asked Appellant if he was willing to be interviewed about the crime. Appellant agreed to speak with police about the murder and accompanied them to the homicide office. Upon his 5:00 p.m. arrival, Appellant was informed that police wanted to speak to him about Marcia Jones's death. They read him his rights from a pre-interrogation warning form. Appellant waived his rights and signed the form.

¶ 6 Appellant initially denied that he knew the victim but then changed his story, stating that he had witnessed Anthony Fiebiger kill her. Appellant then altered his story again. This time, he related the following version of events. He and Fiebiger were in Mount Washington and wanted to engage in sex with a woman. They decided to go to Grandview Park to rape someone and there encountered Ms. Jones, who Appellant knew from school. Fiebiger asked Ms. Jones if she wanted to smoke marijuana with them. Neither Appellant nor Fiebiger had any marijuana; the suggestion was a ploy to lure the victim into a wooded area. The victim agreed to smoke marijuana and accompanied them into the wooded area.

¶ 7 Immediately after the three people entered the wooded area, Fiebiger punched the victim in the face and began to strangle her with his hands and then her belt. Fiebiger then disrobed the victim and had sex with her while Appellant acted as a lookout. Next, Appellant attempted to rape her but was not able to sustain an erection after he observed blood on her face and mouth. The two men then dragged Ms. Jones's body into a ditch, covered her with weeds, and proceeded to Fiebiger's house to obtain a knife to stab the victim in order to ensure that she was dead. They returned to the body and uncovered it. Fiebiger stabbed Ms. Jones in the neck three or four times and then handed the knife to Appellant, who stabbed her in the neck two or three times. They covered the body again and left the scene.

¶ 8 At approximately 5:45 p.m., forty-five minutes after his arrival at the police station, Appellant was placed under arrest. Detective Logan had taken notes of Appellant's confession, read it back to him, and gave it to him to review. Appellant signed his confession.

¶ 9 Blood and saliva samples were taken from Appellant, who has Type A blood he secretes through his saliva. Approximately thirty percent of the Caucasian population is a Type A secretor. Testing done in 1982 of the cigarette uncovered at the scene of the crime had saliva secretions that were consistent with a person with Type A blood.

¶ 10 At trial, Appellant testified that he never was informed of his rights, the warning form was not read to him, and he asked for an attorney. He admitted that he signed the form waiving his rights but stated that he thought that it was a release form. He denied confessing to the crime.

¶ 11 Based on this evidence, a jury convicted Appellant on May 20, 1999, of second-degree murder. He was sentenced on June 21, 1999, to life imprisonment. This timely appeal followed.

■ ¶ 12 Appellant first contends the trial court erred, under Pa.R.Crim.P. 1114, in permitting the pre-interrogation warning form to go out with the jury during deliberations. The form was introduced into evidence without objection as a Commonwealth exhibit. Prior to deliberations, however, Appellant objected to the form going out with the jury under Pa.

R.Crim.P. 1114, which provided at the time of trial:[1]

**Rule 1114. Material Permitted in Possession of the Jury**

1. Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph 2.

2. During deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written or otherwise recorded confession by the defendant, nor a copy of the information.

¶ 13 The form in question contained biographical data regarding Appellant as well as his constitutional rights. It contained none of the materials prohibited by Rule 1114. There is no indication Appellant admitted to anything. The form merely states that Appellant understood his rights and was waiving them to speak with police. Hence, this claim fails.

■ ¶ 14 Appellant, again relying upon Pa.R.Crim.P. 1114, also contends that the trial court abused its discretion in allowing his confession to go out with the jury during its deliberations. Appellant mischaracterizes the facts. During deliberations, the jury asked to see the written confession. The court specifically refused to allow the written confession to go out with the jury. Instead, the jurors were called back into the jury box and then permitted to review the statement briefly while they remained in the jury box. They were not permitted to deliberate while in the jury box reviewing the confession. The review took only nineteen minutes. Thus, it took an average of one and one-half minutes for each of the twelve jurors to review the statement. Finally, the trial

court specifically instructed the jurors that the confession was just one piece of evidence, they were not to give undue weight to it, and they were to consider all of the evidence presented during trial by both the Commonwealth and the defendant.

■ ¶ 15 The case law is clear that the overriding concern of Rule 1114's prohibition against written confessions going out with the jury is that the physical presence of the confession within the jury room may cause it to be emphasized over other evidence in the form of testimony heard from the witness stand. *Commonwealth v. Foster*, 425 Pa.Super. 61, 624 A.2d 144 (Pa.Super.1993). That concern was not implicated in this case due to the fact the confession was never physically in the jury room during deliberations. Compare *Commonwealth v. Young*, 2001 PA Super 27, 767 A.2d 1072.

¶ 16 The procedure employed by the trial court was correct and analogous to re-reading a portion of the transcript to the jury. This action is permitted within the sound discretion of the trial court. *See Commonwealth v. Bango*, 560 Pa. 84, 454 Pa.Super. 339, 742 A.2d 1070 (1999). *Commonwealth v. Ingram*, 404 Pa.Super. 560, 591 A.2d 734 (Pa.Super.1991); *see also Commonwealth v. Gladden*, 445 Pa.Super. 434, 665 A.2d 1201 (1995) (no error under Pa.R.Crim.P. 1114 in allowing police testimony regarding contents of a confession to be read to the jury). We conclude no error occurred.

■ ¶ 17 Appellant's last assignment of error is that the court erred in failing to grant him a mistrial based on the following. The final portion of the detective's notes of Appellant's confession reads that on a different occasion, Appellant and Fie-

---

**1.** The rule since has been amended to prohibit written jury instructions from going out with the jury.

biger had "picked up a girl together but it wasn't rape[,] she wanted it. . . ." Commonwealth Exhibit 56. Appellant said that after the incident, the girl caught a cab and left.

¶ 18 Appellant notes that the trial court refused to allow the Commonwealth to refer to that portion of the confession during trial. However, when the jury reviewed the statement in the jury box, that portion was not eliminated. When Appellant realized that the jury may have seen the reference to the other girl, he requested a mistrial on the grounds that it was an impermissible reference to prior crimes or bad acts. That request was denied.

> Our standard of review for determining whether the trial court erred in not granting a mistrial is as follows. A motion for mistrial is a matter addressed to the discretion of the court. *See Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491, 502–03 (1995). A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. *See id.*

*Commonwealth v. Fetter*, 2001 PA Super 44, 16, 770 A.2d 762, .

¶ 19 Herein, the reference to the other girl in no way can be considered a reference to prior criminal misconduct. Consensual sex between adults is not a crime. Hence, we affirm the trial court's conclusion that Appellant was not deprived of a fair and impartial trial merely because the jury may have been informed that Appellant and Fiebiger had consensual sex with another woman on another occasion. *Id.*

¶ 20 Judgment of sentence affirmed.