J-A06033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT M. CALLAHAN | : | |
| | : | |
| Appellant | : | No. 629 EDA 2016 |

Appeal from the Judgment of Sentence September 2, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000141-2015

BEFORE:   PANELLA, J., SHOGAN, J. and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                    **FILED AUGUST 23, 2017**

Appellant, Robert M. Callahan, appeals from the judgment of sentence of three to six years of incarceration and a concurrent fourteen years of probation with sexual offender registration, imposed on September 2, 2015, following a jury trial resulting in his conviction for rape by forcible compulsion, aggravated indecent assault by forcible compulsion, and sexual assault.[1]  We affirm.

The trial court summarized the facts of the case as follows:

At the time of the events on trial, the victim was 54 years old and lived in Souderton, Montgomery County.  She worked as a part-time employee at a Wa[w]a store in Horsham, Montgomery County.  Her regular shift at the Wa[w]a was 6:00 a.m. to 2:00 to 3:00 p.m.  [Appellant] resided in Warminster Township, Bucks County.  The victim and [Appellant] had dated on and off for

---

[1] 18 Pa.C.S.§§ 3121(a)(1), 3125(a)(2), 3124.1, respectively.

approximately three years and had what the victim described as a "rocky" relationship.

On November 15, 2014, the victim arose at 4:30 a.m. and worked from 6:00 a.m. to 2:30 p.m. at the Wawa. At the end of her shift, the victim discovered that [Appellant] had left her voice and text messages on her cell phone asking her to call him. She later spoke to [Appellant] and agreed to meet at his home. While they were at [Appellant]'s residence, the victim and [Appellant] engaged in consensual sexual intercourse. Afterward, the victim told [Appellant] that she wanted to sleep because she was tired and had to be up early the next morning for work. In response, [Appellant] told her that she "was going to f--- him all night long." The victim testified that [Appellant] then used physical force to have sex with her. The victim testified that, although she yelled and screamed and told [Appellant] to stop, [Appellant] ignored her and forced his penis into her vagina. [Appellant], who was aware that the victim had previously suffered a broken neck, pinned the victim to the bed and wrapped both hands around her neck, squeezing and twisting her neck as he did so. [Appellant] told the victim that he was going to hurt her. In fear, the victim cried out for her deceased mother. [Appellant] responded by punching her with a closed fist in the face. The victim continued to scream and cry and told [Appellant] to get off of her. When he did not do so, she punched him, scratched him and bit his face, all to no avail.

After the assault, the victim, unclothed, grabbed her bag and fled the residence. She was able to retrieve some clothes and her cellphone when [Appellant] threw them out the back door of the residence. The victim called her daughter from her car. She then drove to her daughter's residence in Willow Grove, Montgomery County, where she lived with her fiancé. At trial, the victim's daughter and the daughter's fiancé testified that the victim was crying and hysterical when she called and that she was still crying when she arrived at their residence. They noted that she was "pretty banged up" and had marks on her neck and eye. The victim was then taken to Abington Memorial Hospital where she underwent a sexual assault examination. At that time, the victim was described as disheveled and distraught. The examination revealed an abrasion/bruise on her left cheek, bruising on the right side of her neck, bruising on the left side of her neck/mandible, bruising on her right chest, bruising on her right hand in the area of her wrist, bruising on left arm, bruising on the inside of both thighs, and an abrasion on the right thigh.

Photographs of the injuries were admitted at trial. The victim reported the incident to the police while she was at the hospital.

The following day, November 16, 2014, investigators from the Bucks County District Attorney's Office and the Warminster Township Police Department intercepted a telephone conversation between the victim and [Appellant] with the victim's consent in accordance with the provision of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701 to 5782.23. Throughout that conversation, the victim accused [Appellant] of rape. [Appellant] made several incriminating statements. He told the victim, "I was begging you and you wouldn't give me." He stated, "I obviously didn't wanna take your no for an answer, I guess." When he was asked "Why did you hold me down like that?" [Appellant] responded, "I don't know why." On multiple occasions, he told the victim that he was sorry.

[Appellant] was arrested on November 17, 2015. At that time, Sergeant Carol Battistini of the Warminster Township Police Department noted that [Appellant] had fresh scratch marks on the left side and the right of his face and an abrasion on the back of his right hand. Photographs of the injuries were admitted at trial.

On that same date, [Appellant] gave a statement to Sergeant Battistini. During that statement, [Appellant] stated that he could not remember if he told the victim he wanted to have sex again. At trial, [Appellant] testified that he told the victim he wanted to "do it all night long" as the victim reported. In his statement, [Appellant] could not explain how the victim sustained her injuries. Nor could he explain the scratches to his face. [Appellant] told Sergeant Battistini that he assumed the victim scratched his face. At trial, [Appellant] explained the injuries as follows: The scratches to one side of his face were caused when the victim, for no apparent reason, slapped his face. The scratches to the other side of his face were caused when the victim bit his face. The victim's wrist injury was caused when he grabbed the victim by the wrist and pushed her down on the bed, restraining her by placing his arm across her chest. The victim's face was injured when his head struck her face while he was in the process of restraining her. [Appellant] could not explain the injury to the victim's neck. In his statement to police, [Appellant] admitted that he knew that the victim was tired, wanted to go to sleep and did not want to

- 3 -

engage in sexual intercourse a second time. He admitted that he and the victim had a "fight" as a result and that she left because she was "mad" at him. At trial, [Appellant] admitted that during the "fight" he used physical force against the victim and that the victim screamed for her mother during that struggle. Finally, while he was speaking to Sergeant Battistini, [Appellant] mentioned that he spoke to the victim by phone the morning after the incident. Unaware of the fact that investigators were recording the conversation, [Appellant] lied about the content of that conversation, denying that the victim accused him of having sex against her will.

Trial Court Opinion, 5/16/16, at 1-5 (footnotes omitted).

In April 2015, a jury trial commenced, after which Appellant was found guilty of the aforementioned crimes. He was sentenced as outlined above. Appellant timely filed a post sentence motion, which was denied by the trial court in February 2016. Appellant timely appealed and filed a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive statement.

Appellant raises the following issues for review:

A. Did the trial court err by failing to properly instruct the jury on the law needed to determine the issues, *mens rea*, consent, mistake of fact, credibility, and totality of the circumstances?

B. Did the trial court err in finding that there was sufficient evidence of forcible compulsion, *mens rea*, and to negate the defenses of consent and mistake of fact?

C. Did the trial court err in determining that the jury's verdict was not against the weight of the evidence of forcible compulsion, *mens rea*, and to negate the defenses of consent, and mistake of fact?

D. Did the trial court err in allowing Appellant's confession to be played three times during deliberations while also precluding contextual and contradictory evidence resulting in an abuse of

- 4 -

discretion, prejudice to the defense, disparate treatment of evidence, and skewed presentation to the jury?

Appellant's Brief at 5-6.

Appellant's first contention is that the trial court failed to instruct the jury properly. According to Appellant, the court (1) "eliminate[d] the mens rea requirement" necessary to establish culpability; (2) refused to instruct the jury on his asserted defenses, including consent and mistake of fact; and (3) failed to instruct the jury that it must consider the totality of the circumstances surrounding the parties' relationship. Appellant's Brief at 23-36.[2]

Our standard of review is well-settled:

> When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Miskovitch*, 64 A.3d 672, 684 (Pa. Super. 2013). "A trial court has broad discretion in phrasing its jury instructions and is not

---

[2] Appellant's brief is rambling, in places nonsensical and nearly unintelligible; however we attempt to decipher Appellant's claim. *See Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa. Super. 2008) (waiver results when appellant fails to properly develop an issue or cite to authority to support his contention in his appellate brief).

required to read the Standard Jury Instructions verbatim." ***Commonwealth v. Pope***, 14 A.3d 139, 144 n.1 (Pa. Super. 2011). "Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said." ***Commonwealth v. Grimes***, 982 A.2d 559, 564 (Pa. Super. 2009).

According to Appellant, the trial court erred in denying his request for defense instructions regarding consent and mistake of fact. Appellant's claim regarding consent is without merit. The trial court clearly instructed the jury regarding consent, instructing as follows:

> Consent, you must decide consent based on what occurred on the occasion that the rape - - the rape charge deals with. Because you consent on one occasion does not mean that you consented on another occasion.

Notes of Testimony, 4/16/15 at 42-43.

> Again the trial court issued the following instruction regarding consent:

> [S]exual assault is committed when the person does not consent. Consent is an act of free will. Active opposition is not a prerequisite to finding the victim did not consent. Again, that means that resistance is not required - - failure to resist is not necessarily evidence of consent.

***Id.*** at 46. As such, Appellant's claim is without merit.

Appellant further asserts that the trial court erred in denying his request for a *mens rea* jury instruction as it relates to his mistake of fact defense. Specifically, Appellant next sought a jury instruction applying recklessness to the forcible compulsion crimes, Appellant argued:

The Court: You are saying there should be recklessness on rape?

. . .

Mr. Hone: I believe it is tied into my mistake of fact defense. I believe there is a mistake of fact and consent that has to be - -

The Court: Okay, Okay. The mistake of fact I think I am bound by the Superior Court case of 2000. That is why I am not giving it.

Mr. Hone: Okay

The Court: The other is lack of consent has to be known or recklessly ignored. Force is something that is being applied by the defendant, so he doesn't - - I don't know that there is any element that - - what mens rea element am I applying recklessness to? Or is it just mistake of fact?

Mr. Hone: I think it relates because it relates to the mistake of fact.

The Court: Okay.

Notes of Testimony, 4/16/15 at 57-58.

The trial court properly denied Appellant's request, as mistake of fact is not a defense to the forcible compulsion crimes. Mistake of fact is defined as follows:

Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:

(1) The ignorance or mistake negates the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or

(2) The law provides that the state of mind established by such ignorance or mistake constitutes a defense.

18 Pa.C.S. § 304.

However, this Court has long held that mistake of fact is not a defense to rape. *See Commonwealth v. Williams*, 439 A.2d 765 (Pa. Super. 1982) (holding that the defendant's state of mind is not a defense as to the crime of rape), *see also Commonwealth v. Farmer*, 758 A.2d 173 (Pa. Super. 2000) (applying *Williams* in an ineffective assistance of counsel claim).

Appellant further claims that the trial court did not allow the jury to consider the totality of the circumstances. This claim is without merit. The trial court specifically instructed the jury to "consider all of the circumstances in deciding whether or not the decision to engage in sexual intercourse was overcome by forcible compulsion, whether or not the victim consented." Notes of Testimony, 4/16/15, at 46. Appellant appears to conflate two distinct considerations. The jury is permitted to consider the nature of the parties' prior, consensual conduct; however, a jury is never permitted to infer a victim's consent to engage in similar conduct from prior examples of consent. *See Commonwealth v. Johnson*, 638 A.2d 940 (Pa. 1994) (holding that the purpose of the Rape Shield Law is to prevent a sexual assault trial from degenerating into an attack upon the victim's reputation for chastity).

Appellant suggests that these errors cumulatively result in a violation of his right to due process. The claim is waived, as Appellant failed to raise a due process claim in his 1925(b) statement. *See Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998) ("Any issues not raised in a 1925(b)

- 8 -

statement will be deemed waived."). Nevertheless, in light of our disposition of each individual claim, Appellant's cumulative claim is without merit.[3]

Appellant's second issue is that the evidence was insufficient to sustain his conviction for rape by forcible compulsion under 18 Pa.C.S.A. § 3121(a)(1). Specifically, Appellant contends there was insufficient evidence to establish the element of forcible compulsion.[4]

The standard of review for a challenge to the sufficiency of evidence is *de novo*, as it presents a question of law. **Commonwealth v. Ratsamy**, 934 A.2d 1233, 1235 (Pa. 2007).

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

**Id.** at 1235-36 (emphasis in original) (internal punctuation modified; citation omitted). "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable

---

[3] Appellant also asserts that the trial court abused its discretion in permitting the Commonwealth to withdraw charges for certain, lesser included offenses. Appellant's Brief at 28. This claim was not preserved for appellate review in Appellant's Pa.R.A.P. 1925(b) statement. Accordingly, we deem it waived. **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998).

[4] In this context, Appellant also challenges the credibility of the victim's testimony. **See** Appellant's Brief at 40. Such a claim is more appropriately directed to the weight of the evidence, not its sufficiency. **See, e.g., Commonwealth v. Sullivan**, 864 A.2d 1246, 1249-50 (Pa. Super. 2004).

inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *Id.* at 1237 (citation omitted).

Appellant was convicted of rape by forcible compulsion which provides, in relevant part, that "[a] person commits a felony of the first degree when the person engages in sexual intercourse with a complainant: (1) [b]y forcible compulsion." 18 Pa.C.S.A. §3121(a)(1). "[P]enetration, however slight," of the female genitals with the penis is necessary to establish the element of sexual intercourse. 18. Pa.C.S.A. §3101. "Something more" than mere lack of consent is necessary to establish "forcible compulsion." *Commonwealth v. Smolko*, 666 A.2d 672, 676 (Pa. Super. 1995); *Commonwealth v. Riley*, 643 A.2d 1090 (Pa. Super. 1994). Forcible compulsion is a determination made in each case based on the totality of the circumstances that have been presented to the fact-finder. *Smolko*, 666 A.2d at 675.

Here, Appellant concedes that he engaged in sexual intercourse with C.F.; however, he contends that the Commonwealth failed to establish forcible compulsion and lack of consent. Appellant's Brief at 39.

In rejecting Appellant's sufficiency of the evidence claim, the trial court determined:

> The evidence in the instant case was clearly sufficient to establish the element of forcible compulsion and lack of consent. Viewed in the light most favorable to the Commonwealth, the

> evidence established that [Appellant] held the victim down, that he strangled her and that he punched her in the face. The victim made her lack of consent verbally known by screaming, yelling, telling [Appellant] to stop and telling him to "get off" of her. She made her lack of consent physically known by punching, scratching and biting him."

Trial Court Opinion, at 6-7.

Appellant argues that his past sexual history with the victim negates the finding of forcible compulsion. Appellant's Brief at 39. We disagree. The mere fact that the victim consented to sexual intercourse earlier that evening does not establish blanket consent for future sexual encounters. In the instant case, there are clearly two separate sexual encounters, the first encounter was consensual, the second encounter was not. It is evident that the victim withdrew her consent and the subsequent sexual encounter formed the basis for the rape conviction.

Appellant relies on **Commonwealth v. Berkowitz**, 641 A.2d 1161 (Pa. 1994), in support of his argument. In **Berkowitz**, the parties were both college students, and the victim entered a dormitory room looking for a friend. **Id.** at 1163. The victim instead found the defendant, and the two engaged in sexual intercourse. **Id.** The defendant was subsequently charged with rape and indecent assault. **Id.** The victim testified that defendant "put [her] down on the bed" and described it as "kind of like a push". **Id.** at 1164. This Court reversed the defendant's rape conviction, holding the complainant failed to establish the accused compelled her to engage in sexual intercourse as required under Section 3121. **Id.** 1165.

The decision was upheld by the Pennsylvania Supreme Court who opined, "where there is a lack of consent, but no showing of either physical force, a threat of physical force, or psychological coercion, the 'forcible compulsion' requirement . . . is not met." *Id.* at 1164.

The incident in **Berkowitz** is not analogous to this case. Here, there is a clear showing of physical force.

> [Appellant], who was aware that the victim had previously suffered a broken neck, pinned the victim to the bed and wrapped both hands around her neck, squeezing and twisting her neck as he did so. [Appellant] told the victim that he was going to hurt her. In fear, the victim cried out for her deceased mother. [Appellant] responded by punching her with a closed fist in the face. The victim continued to scream and cry and told [Appellant] to get off of her. When he did not do so, she punched him, scratched him and bit his face, all to no avail.

Trial Court Opinion at 2, footnote omitted.

The evidence of Appellant's physical force used in the rape, which resulted in documented bodily injuries to the victim, was more than sufficient to prove forcible compulsion. 18 Pa.C.S.A. §3121; **Commonwealth v. Riley**, 643 A.2d 1090 (Pa. Super. 1994).

Appellant next asserts that the verdict was against the weight of the evidence. **See** Appellant's Brief at 41. Appellant asserts that he and the victim had a long-standing history of rough, consensual intercourse. **Id.** Appellant also challenges the victim's credibility. **Id.**

The law regarding weight of the evidence claims is well-settled. "The weight of the evidence is a matter exclusively for the finder of fact, who is

free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citing *Commonwealth v. Forbes*, 867 A.2d 1268, 1273-74 (Pa. Super. 2005)).  A new trial is not warranted because of a "mere conflict in the testimony".  *Id.* (citing *Commonwealth v. Bruce*, 916 A.2d 657, 665 (2007)).  On appeal, "our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience.  Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa. Super. 2012).

After reviewing the record and trial transcripts, we conclude the trial court did not abuse its discretion in finding Appellant's convictions were supported by the weight of the evidence.  The jury made the credibility determinations and was permitted to believe all, part, or none of the testimony and evidence.  Although Appellant may believe the victim was not a credible witness, we cannot and will not disturb the credibility determinations made by the jury.

In its Rule 1925(a) opinion, the trial court fully and satisfactorily explains why Appellant's weight of the evidence claim is unsuccessful:

> In support of his challenge to the weight of the evidence, the [Appellant] relies on the same facts and circumstances he advanced in support of his challenge to the sufficiency of the

- 13 -

evidence, i.e. the prior sexual relationship between the parties, inconsistent statements of the victim, the alleged brevity of the incident and the lack of vaginal trauma. Those facts and circumstances, considered alone or considered together, are not sufficient to overturn the jury's verdict for the reasons set forth above. In addition, a jury verdict cannot be overturned based on a claim the verdict is against the evidence because of a "mere conflict in the testimony." Such a claim must have a stronger foundation than a reassessment of the credibility of witnesses. Moreover, the [Appellant]'s argument as to the lack of vaginal trauma does not entitle him to relief since that evidence does not exculpate him. The jury was, therefore, free to reject the [Appellant]'s arguments as to that evidence.

Trial Court Opinion at 9-10.

For the reasons given by the trial court, we conclude that it properly exercised its discretion in denying Appellant's challenge to the weight of the evidence.

Appellant's final claim asserts that the trial court violated Pa.R.Crim.P. 646 when permitting the jury to hear Appellant's "confession" during deliberations. Appellant's Brief at 45. Appellant asserts that the court played the conversation while precluding contradictory evidence and thus skewed the presentation to the jury. *Id.*

Decisions as to what exhibits may be taken out by the jury are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Akers*, 572 A.2d 746, 755 (Pa. Super. 1990). Pa.R.Crim.P. 646(C)(2) prohibits the jury from receiving "a written or otherwise recorded confession by the defendant." In the instant case the jury was not provided with a written copy of this conversation. Rather, on two occasions after deliberations began, the jury

was played the recorded conversation in open court. *See Commonwealth v. Gladden*, 665 A.2d 1201 (Pa. Super. 1995) (holding that the rule which stated that jury could not have a copy of any written confession made by defendant with them while they deliberated, did not apply to reading of confession by court reporter after the jury had been sent to deliberate).[5]

Appellant further argues that replaying the recording caused the jury to place undue emphasis on that piece of evidence. Appellant's Brief at 48. The trial court relies on *Commonwealth v. Morton*, 774 A.2d 750 (Pa. Super. 2001), noting:

> In addressing the predecessor to Rule 646, the court in *Morton*, held that a jury was properly allowed to review a defendant's written confession during deliberations, where the trial court specifically refused to allow the confession to go out with the jury but, rather, permitted jurors to review the confession while they sat in the jury box. In doing so, the court stated,
>
> > The case law is clear that the overriding concern of Rule 1114's prohibiting against written confessions going out with the jury is that the physical presence of the confession within the jury room may cause it to be emphasized over other evidence in the form of testimony heard from the witness stand. *Commonwealth v. Foster*, 425 Pa.Super. 61, 624 A.2d 144 (Pa. Super. 1993). That concern was not implicated in this case due to the fact the confession was never physically in the jury room during deliberations. Compare *Commonwealth v. Young*, 2001 P[a]. Super[.] 27, 767 A.2d 1072.

---

[5] "In 1995 the Supreme Court amended Rule 1114 (now Rule 646(B)(2) to prohibit the jury from receiving "a copy of any written or otherwise recorded confession by the defendant". *Commonwealth v. Williams*, 959 A.2d 1272, 1285 (Pa. Super. 2008).

> *Id.*  The [Appellant's] claim that the playing of the recording may have caused the jury to emphasize that conversation over other evidence is therefore without merit.  Moreover, in closing arguments, both the Commonwealth and the Defendant extensively argued the content and meaning of the recorded conversation.  The defendant argued that it is exculpatory; the Commonwealth contended that it is incriminating.  Both parties disputed the other parties' representations concerning the content and meaning of the conversation.  Since both the attorney for the Commonwealth and the attorney for the Defendant argued that the conversation proved their respective cases, replaying that recorded conversation cannot be deemed to have "skewed the case" or to have "focused" the jury on the Commonwealth's "most powerful evidence" as the Defendant alleges.

Trial Court Opinion at 17.  Based on the foregoing, we discern no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2017