J-S02029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROOSEVELT SCARBOROUGH | : | |
| | : | |
| Appellant | : | No. 620 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009059-2018

BEFORE: LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:               **FILED MARCH 12, 2024**

Roosevelt Scarborough (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of involuntary deviate sexual intercourse with a child, aggravated indecent assault of a person less than 13 years old, unlawful contact with a minor, corruption of a minor, and endangering the welfare of a child.[1] We affirm.

The trial court summarized the facts presented at trial:

> In 2014, [Complainant] was nine years old and living in a house … in Philadelphia with her mother [(Mother)], her younger siblings, and [Appellant], who at the time was approximately 25 years old and was the boyfriend of [M]other. [M]other and [Appellant] also had their own child together [(Appellant's child)].

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3123(b), 3125(a)(7), 6318(a)(1), 6301(a)(1)(ii), 4304(a)(1).

[Complainant] sometimes shared a room with [Appellant's child], who was still a baby at that time.

[Complainant] considered [Appellant] to be a father figure, given that he had been present in her life for most of her childhood. When [M]other was at work, there were times when [Appellant] would be at home with [Complainant] and would be the only adult watching her and the other children. …

During a time in 2014 when [Appellant] was alone with [Complainant] in the basement of the home, [Appellant] told [Complainant] that he had to ask her something but did not want to ask because he was afraid that [Complainant] would tell her [M]other. On a later date, [Appellant] asked [Complainant] if he could lick [Complainant]'s vagina. The following night, [Appellant] entered a bedroom where [Complainant] and [Appellant's child] were sharing a bed and sleeping. The bed was pushed up against a wall, with [Appellant's child] sleeping closer to the wall and [Complainant] sleeping on the outside edge towards the middle of the room. [Complainant] woke up to [Appellant] pulling down her underwear and saying that [Complainant] "might as well just let it happen." [Appellant] proceeded to use his fingers to touch [Complainant]'s vagina and then began to lick and penetrate her vagina with his tongue. Eventually, [Appellant] stopped and, while walking out of the room, told [Complainant] that the cellular service on her cellphone, which had been turned off for some time, would be turned back on in the morning.

The next morning, the cellular service on [Complainant]'s cellphone began working. After the night of the assault, [Appellant] also took [Complainant] out to go shopping together for items that she had wanted, something which had not happened before. [Complainant] also noticed that [Appellant] had become less strict with her after the night of the assault.

In approximately the fall of 2015, [Complainant] and her family, together with [Appellant], moved … to the home of [Complainant]'s grandfather … in Philadelphia. A number of other family members lived there as well. In that home, [Complainant] generally slept in the living room together with her siblings.

One evening, while [Complainant] was sleeping on a pull-out sofa in the living room[,] together with [Appellant's child,] … [Complainant] woke up as [Appellant] was pulling down her clothes. Her siblings were all asleep in different places in the living

room at that time. After pulling down [Complainant]'s clothes, [Appellant] again began to touch and lick [Complainant]'s vagina. [Appellant] finally stopped when one of [Complainant]'s brothers moved and appeared to be waking up. [Appellant] then left the living room and went into his bedroom.

On a separate occasion, [Appellant] asked [Complainant] if she wanted to watch him shower. On a later date, [Complainant] discovered that [Appellant] had used his cellphone to attempt to record [Complainant] while she was in the bathroom taking a shower. [Complainant] noticed [Appellant]'s cellphone in the bathroom as she was undressing and getting ready to enter the bathtub. After seeing that the cellphone was recording video, she deleted the video. When [Appellant] realized that [Complainant] had discovered the cellphone, [Appellant] told [Complainant] that he was sorry.

Trial Court Opinion, 5/19/23, at 2-4 (record citations omitted).

The trial court also summarized the events occurring after the abuse ended:

At some point after the assaults on [Complainant], [Appellant] told [Complainant] that if [Complainant] were to tell her [M]other about what he had done to [Complainant], [Appellant] would have to go away and would no longer be able to be together with [Appellant's child].… Because [Complainant] had never had a father in her life, [Complainant] did not want to see [Appellant's child] go through the same experience of not having a father.

Approximately a year after the family moved to [Complainant's grandfather's house], the relationship between [Appellant] and [M]other ended, and [Appellant] moved out of the house. After that, [Complainant] saw [Appellant] infrequently, such as when [Appellant] came to visit [Appellant's child]. There were no further incidents of abuse against [Complainant]. In December 2016, after a physical altercation between [Appellant] and [M]other, [M]other petitioned for and received a protection from abuse order against [Appellant].

In the spring of 2018, [Complainant] disclosed the sexual abuse by [Appellant] to her best friend and then to [M]other. After [Complainant] told her about the abuse, [M]other confronted

- 3 -

[Appellant] on May 14, 2018, via text messages on her cellphone. In messages back to [M]other, [Appellant] repeatedly acknowledged that he had sexually abused [Complainant] and repeatedly expressed regret for what he had done. In one message, [M]other told [Appellant] that [Complainant] said that [Appellant] "gave her oral twice or something and [Appellant] liked her." When [M]other asked [Appellant] "what was going through [his] head," [Appellant] responded in a lengthy message that he "really [didn't] know," that he was "goin thru a lot mentally," that he was "beyond wrong," that "the guilt was eating at [him]," and that he had told [Complainant] that he was sorry. [Appellant] further stated in the message that he "[w]anted it to come out along [sic] time ago but [Complainant] didn't wanna tell," that he knew he had hurt [Complainant], that he wished he could "take it back," and that he had "done the worst thing."

*Id.* at 4-5 (record citations omitted).

On January 4, 2019, the Commonwealth charged Appellant in a twenty-one count information. Prior to trial, the Commonwealth withdrew all but the five counts described above. A jury trial held in May 2022 resulted in a hung jury. On September 29, 2022, following a retrial, a jury convicted Appellant of all five remaining counts.

On December 16, 2022, the trial court imposed an aggregate sentence of 16 to 32 years in prison, followed by four years of probation. Appellant's convictions also rendered him a Tier III offender under the Sexual Offender Registration and Notification Act (SORNA), subjecting him to lifetime registration and reporting requirements. *See* 42 Pa.C.S.A. §§ 9799.10 *et seq*.

Appellant filed timely post-sentence motions on December 26, 2022, and February 6, 2023. Appellant claimed, *inter alia*, that the verdict was against the weight of the evidence; the trial court improperly admitted text

- 4 -

messages between Mother and Appellant into evidence; and the court improperly allowed the jury to view the text messages during deliberations. The trial court denied Appellant's post-sentence motions. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

I. Did the trial court err in overruling an authentication objection to the admission of purported text message screenshots where the proponent of the text messages had destroyed both the text messages themselves and the phone on which they were received, and where the law enforcement officers involved took no steps to corroborate the authenticity of the messages by attempting to preserve any of the phones involved, forensically examine them, or obtain proof that the messages were real or that the messages were even sent from the phone company?

II. [Did the trial court err] in showing the purported text message screenshots to the jury during deliberations in violation of Pa.R.Crim.P. 646 and the coordinate jurisdiction rule[,] given that the messages, if real, amounted to a confession by [Appellant] and a prior judge had already ruled at the previous trial that the jury could not see the messages during deliberations?

III. Should the trial court have granted a new trial because the verdict was against the weight of the evidence[,] where the only evidence was the inconsistent, nearly impossible-to-believe testimony of the [C]omplainant and effectively unauthenticated text message evidence offered by the [C]omplainant's mother, who had destroyed the original text messages and phone involved?

Appellant's Brief at 9-10.

In his first issue, Appellant argues the trial court improperly admitted into evidence purported screenshots of text messages between Mother and

Appellant. *Id.* at 24-30. He maintains Mother's testimony was insufficient to authenticate the screenshots, asserting Mother

> destroyed the original messages and the phone on which they were supposedly received, and the police, despite having access to the phone, did not conduct any independent investigation, forensic examination, or make any attempt to subpoena records from the phone company.

*Id.* at 21. He maintains the police's failure to perform a forensic examination of Mother's phone or Appellant's phone, or to obtain records from the phone company, rendered the authentication insufficient under Rule 901(b)(11)(B)(ii). *Id.* at 28-30.

The Commonwealth counters that the screenshots were properly authenticated by testimony from Mother and Detective Toni Madgey. Commonwealth Brief at 11-12.

> Under our standard of review,
>
> [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will.

*Commonwealth v. Bowens*, 265 A.3d 730, 746 (Pa. Super. 2021) (*en banc*) (citations and quotation marks omitted).

Pennsylvania Rule of Evidence 901 requires that, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Rule 901(b) provides a

non-exhaustive list of "examples … of evidence that satisfies the requirement" of Rule 901(a), including:

> (1) *Testimony of a Witness with Knowledge*.  Testimony that an item is what it is claimed to be.
>
> ….
>
> (4) *Distinctive Characteristics and the Like*.  The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
>
> ….
>
> (11) *Digital Evidence*.  To connect digital evidence with a person or entity:
>
>> (A) direct evidence such as testimony of a person with knowledge; or
>>
>> (B) circumstantial evidence, such as:
>>
>>> (i) identifying content;
>>>
>>> (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b).

"The proponent of digital evidence is not required to prove that no one else could be the author.  Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." ***Commonwealth v. Reed***, 292 A.3d 601, 605-06 (Pa. Super. 2023) (quoting Pa.R.E. 901, cmt.).  Circumstantial evidence indicating authorship "includes, for example, testimony from the person who sent or received the

communication or contextual clues in the communication tending to reveal the identity of the sender." *Id.* at 606.

The trial court described the evidence by which the Commonwealth authenticated the screenshots:

> Prior to their admission, [M]other testified that she communicated with [Appellant] via a single telephone number that she knew belonged to him. She had telephone calls with [Appellant] using that telephone number. She recognized [Appellant]'s voice during her calls with [Appellant] on that telephone number. She also regularly used that telephone number to communicate with [Appellant] via text messages on a variety of subjects, including with respect to [Appellant's child] and to make plans together. For example, [M]other testified that she would text [Appellant] using that number about bringing something for [Appellant's child], and then he would appear later with the item for his [child]. [M]other took screenshots of the text messages on May 14, 2018[,] that were exchanged between her and [Appellant] on that number, identified at trial as Commonwealth's Exhibit C-2. The screenshots show the messages from [Appellant]'s cellphone as coming from "Bam," a nickname for [Appellant] used by [M]other. [M]other saved contact information for [Appellant] in her cellphone under the name "Bam." After reviewing the text messages contained in Commonwealth's Exhibit C-2, [M]other testified that the exhibit contained a fair and accurate depiction of the text message conversation that she had with [Appellant] on May 14, 2018.

Trial Court Opinion, 5/19/23, at 13-14 (record citations omitted). The trial court also noted, "Detective Toni Madgey testified that she personally called the telephone number displayed on the screenshots of the text messages provided by [M]other, and that the person who answered the call identified himself as [Appellant]." *Id.* at 12 (record citation omitted). On the basis of this evidence, the trial court determined the Commonwealth "met its burden of authenticating the screenshots." *Id.* at 14.

Appellant relies on **Commonwealth v. Mangel**, 181 A.3d 1154 (Pa. Super. 2018), in which we upheld the trial court's exclusion of certain Facebook screenshots from evidence. There, we observed that

> social media records and communications can be properly authenticated within the existing framework of Pa.R.E. 901 and Pennsylvania case law, similar to the manner in which text messages and instant messages can be authenticated. Initially, authentication [of] social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender.

**Mangel**, 181 A.3d at 1162 (citations omitted).

In **Mangel**, the Commonwealth failed to present testimony by a person with direct knowledge that the defendant used the Facebook account in question. **Id.** at 1164. The Commonwealth relied solely on the testimony of a detective, who had looked up the account online. **Id.** at 1156-57. However, the detective admitted she could not say with certainty that the defendant sent the messages depicted in the screenshots. **Id.** at 1157. The defendant introduced evidence that a Facebook search revealed five different accounts under the same name as defendant. **Id.** This evidence contradicted the detective's testimony that there was only one account under that name. **Id.** at 1163. Under those circumstances, we discerned no abuse of the trial court's discretion in excluding the screenshots. **Id.** at 1164.

- 9 -

Our review discloses the instant case is distinguishable from **Mangel**. Here, the Commonwealth authenticated the evidence through the testimony of Mother. Mother had direct knowledge of Appellant's authorship of the text messages through her extensive past communications with him using the same phone number. **See** N.T., 9/28/22, at 126-30. The content of the messages further points to Appellant as the sender, as he was in a unique position to possess knowledge of their subject matter. **See Commonwealth v. Orr**, 255 A.3d 589, 601 (Pa. Super. 2021) (affirming authentication of text messages where their subject matter indicated defendant wrote them). Additionally, Detective Madgey testified that she called the number in question and the person who answered the phone identified himself as Appellant. N.T., 9/28/22, at 197-98.

We conclude this evidence was sufficient to authenticate the screenshots under Rule 901(b)(11). We further agree with the trial court that the evidence satisfied the requirements for authentication under Rule 901(b)(1) and (b)(4). **See** Trial Court Opinion, 5/19/23, at 13-14. We discern no abuse of discretion in the trial court's admission of the screenshots. Accordingly, Appellant's first issue merits no relief. **See Commonwealth v. Talley**, 236 A.3d 42, 60 (Pa. Super. 2020), **aff'd**, 265 A.3d 485 (Pa. 2021) (text message screenshots properly authenticated by direct and circumstantial evidence without need for original digital data).

In his second issue, Appellant argues the trial court improperly allowed the jury to view the text messages during deliberations, in violation of both Pa.R.Crim.P. 646(C)(2) and the coordinate jurisdiction rule. *See* Appellant's Brief at 30-40.

The trial court explained that,

> after beginning its deliberations, the jury requested an opportunity to examine the text messages between [Appellant] and [M]other. Defense counsel objected, arguing that the text messages constituted a confession and should neither be sent to the jury room nor shown to the jury. After hearing argument from both defense counsel and the Commonwealth, the [trial c]ourt decided against permitting the text messages to be sent into the jury room. Instead, the [trial c]ourt brought the jury into the courtroom and showed the screenshots of the text messages to the jury on a screen with the parties present. After the screenshots were displayed on the screen for the jury in the courtroom, the [trial c]ourt cautioned the jury "not to give undue weight to just [the screenshots]." The [trial c]ourt further instructed the jury "to consider all of the evidence presented during the trial by both the Commonwealth and [Appellant] and your recollection of that evidence." The [trial c]ourt then sent the jury back into the jury room to continue deliberating.

Trial Court Opinion, 5/19/23, at 15 (record citations omitted).

We review a trial court's decision as to whether a jury may review materials during deliberations for an abuse of discretion. *Commonwealth v. Williams*, 959 A.2d 1272, 1281 (Pa. Super. 2008).

Pa.R.Crim.P. 646 provides, in relevant part:

(A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).

….

(C) During deliberations, the jury shall not be permitted to have:

- 11 -

….

> (2) a copy of any written or otherwise recorded confession by the defendant….

Pa.R.Crim.P. 646(A), (C)(2).

In **Commonwealth v. Morton**, 774 A.2d 750 (Pa. Super. 2001), we held "that the overriding concern" of the rule's "prohibition against written confessions going out with the jury is that **the physical presence of the confession within the jury room** may cause it to be emphasized over other evidence in the form of testimony heard from the witness stand."[2] **Id.** at 753 (emphasis added). However, in **Morton**, the confession "was never physically in the jury room during deliberations." **Id.** When the jury asked to see the defendant's written confession during deliberations, the trial court

> specifically refused to allow the written confession to go out with the jury. Instead, the jurors were called back into the jury box and then permitted to review the statement briefly while they remained in the jury box. They were not permitted to deliberate while in the jury box reviewing the confession…. Finally, the trial court specifically instructed the jurors that the confession was just one piece of evidence, they were not to give undue weight to it, and they were to consider all of the evidence presented during trial by both the Commonwealth and the defendant.

**Id.** We concluded that "[t]he procedure employed by the trial court was correct and analogous to re-reading a portion of the transcript to the jury. This action is permitted within the sound discretion of the trial court." **Id.**

---

[2] **Morton** involved Pa.R.Crim.P. 1114, the predecessor of the current Pa.R.Crim.P. 646, which featured identical language pertaining to confessions. **See Morton**, 774 A.2d at 753 (quoting Pa.R.Crim.P. 1114).

In the instant case, the jury was never permitted to take the text message screenshots into the jury room. The jury reviewed the screenshots only in the courtroom, with the parties present. Moreover, the trial court appropriately instructed the jury not to give the screenshots undue weight, but to consider all the evidence. As in **Morton**, the procedure here was analogous to re-reading a portion of the transcript to the jury. We conclude the trial court's decision to allow the jury to review the screenshots in this manner did not violate Rule 646.

Appellant argues in the alternative that the trial court's decision violated the coordinate jurisdiction rule. **See** Appellant's Brief at 35-40. Appellant asserts the trial court was bound by a ruling made during Appellant's first jury trial, by a different presiding judge, which prohibited review of the screenshots during deliberations. **Id.**

"Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." **Zane v. Friends Hosp.**, 836 A.2d 25, 29 (Pa. 2003).[3] "[I]t is not evident that the doctrine applies" in the context of a retrial,

---

[3] As application of the coordinate jurisdiction rule is a question of law, our standard of review is de novo and our scope of review is plenary. **Zane v. Friends Hosp.**, 836 A.2d at 30 n.8.

"[b]ecause the grant of a new trial wipes the slate clean…." ***Commonwealth v. Paddy***, 800 A.2d 294, 311 (Pa. 2002).

> When a court grants a new trial, the necessary effect thereof is to set aside the prior judgment and leave the case as though no trial had been held…. By the operation of an order granting a new trial, the cause, in contemplation of law, is precisely in the same condition as if no previous trial had been held.

***Commonwealth v. Hart***, 387 A.2d 845, 847 (Pa. 1978) (citation and quotation marks omitted). As "[e]ach trial court has an independent obligation to assure a just proceeding," application of the coordinate jurisdiction rule to evidentiary decisions "would deprive a trial court of discretion it needs to execute its duty and to conduct a fair trial." ***Id.***

Appellant argues the instant case is analogous to the situation presented in ***Commonwealth v. Henderson***, 520 A.2d. 1371 (Pa. 1987). There, a suppression court denied the defendant's pre-trial suppression motion. ***Id.*** at 1372. A trial resulted in a hung jury and, prior to retrial, the defendant requested a new suppression hearing. ***Id.*** Our Supreme Court held that, where the defendant alleged no new evidence in support of his request, the trial court correctly barred re-litigation of the suppression ruling under the doctrine of collateral estoppel. ***Id.*** at 1373.

- 14 -

Appellant's reliance on **Henderson** is misplaced. The **Henderson** Court distinguished **Hart**: "It is beyond peradventure that a **pre-trial** suppression hearing is not part of the trial." **Id.** (emphasis added).[4]

Instantly, the trial court's decision to allow the jury to review certain evidence during deliberations is part of the trial. Thus, the trial court did not err when it determined the coordinate jurisdiction rule did not bar the jury from reviewing the screenshots during deliberations. **See** Trial Court Opinion, 5/19/23, at 16-17. Accordingly, Appellant's second issue merits no relief.

In his third issue, Appellant argues the verdict was against the weight of the evidence. **See** Appellant's Brief at 41-45.

Our standard of review of a weight claim is well settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review

---

[4] The coordinate jurisdiction rule is "based on a policy of fostering the finality of **pre-trial** [decisions] in an effort to maintain judicial economy and efficiency." **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995) (emphasis added). "The core of the doctrine is that a court acting at a later stage of a case should not reopen questions decided at an earlier stage by another judge of the same court or by a higher court." **Paddy**, 800 A.2d at 311.

of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Williams***, 255 A.3d 565, 580 (Pa. Super. 2021) (citing ***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015)). When a weight challenge "is predicated on the credibility of trial testimony, [appellate] review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa. Super. 2012). Conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve. ***Commonwealth v. Sanders***, 42 A.3d 325, 331 (Pa. Super. 2012). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [as to whether] the verdict is against the weight of the evidence." ***Id.***

Without citing to the record, Appellant argues Complainant inconsistently testified about the number of incidents and the dates of the incidents. Appellant's Brief at 42-43. He emphasizes the "extreme delay" in Complainant's reporting the abuse. ***Id.*** at 43. Appellant also makes an undeveloped argument that Complainant and Mother had "a motive to fabricate involving a protection from abuse order and the need for housing." ***Id.*** He further asserts "it is impossible to believe" that the assaults could have

- 16 -

occurred with other people in the room (albeit asleep) without them seeing something. *Id.* As to Mother's testimony, Appellant rehashes his complaints about Mother's and the police's failure to preserve the original text message data. *Id.* at 44.

Here, the trial court addressed the alleged inconsistencies in the witnesses' testimony. Trial Court Opinion, 5/19/23, at 10-12. In particular, the trial court correctly observed, "[t]he testimony of a sexual assault victim standing alone is sufficient weight to support a conviction." *Id.* at 10 (quoting *Commonwealth v. Strutt*, 624 A.2d 162, 164 (Pa. Super. 1993)). The trial court found Complainant "testified credibly" and "provid[ed] compelling evidence of [Appellant's] crimes." *Id.* The trial court found Appellant's own testimony "lacking in credibility based on [his] demeanor and the substance of his testimony."[5] *Id.* at 10 n.3.

The trial court's reasoning is supported by the record. We discern no abuse of discretion in its denial of Appellant's weight claim. Accordingly, Appellant's final issue merits no relief.

Judgment of sentence affirmed.

---

[5] Appellant testified that he never assaulted Complainant and did not send the May 14, 2018, text messages to Mother. *See* Appellant's Brief at 19.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/12/2024