J-S53042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                    :           PENNSYLVANIA
                                                    :
            v.                                :
                                                  :
WILLIAM DEKEYSER                   :
                                                  :
            Appellant               :   No. 3292 EDA 2018

Appeal from the Judgment of Sentence Entered September 14, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003079-2017

BEFORE:  OLSON, J., STABILE, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:           **FILED NOVEMBER 19, 2019**

Appellant William Dekeyser appeals from the judgment of sentence imposed following his jury trial convictions for persons not to possess firearms, carrying a firearm without a license, carrying firearms on public streets in Philadelphia, possessing instruments of crime, and simple assault.[1]  Appellant argues that the trial court abused its discretion by allowing the jury to watch an altered version of the Commonwealth's video evidence during deliberations.  We affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

> [Appellant] pointed a loaded gun at Jervine Oates on March 13, 2017 at about 5:30 p.m., as both men stood less than two feet apart from each other at the corner of 16th Street and Nedro Avenue.  Officers Timothy McGonigle and Judith Kinniry observed

---

[1] 18 Pa.C.S. §§ 6105, 6106, 6108, 907, and 2701, respectively.

[Appellant] pointing the gun as they travelled eastbound along Nedro Avenue in their marked police car. Both officers got out of the car, drew their weapons, announced that they were police, and told [Appellant] to drop the weapon. [Appellant] turned to look at the officers and then ran. Because [Appellant] was about fifty to sixty feet away from the officers, they got back into the car and drove to catch up to him, turning northbound on 16th Street, but ultimately lost sight of him after about ten seconds.

After losing sight of [Appellant], the officers exited the car. Officer Kinniry noticed that people outside were pointing to where there was a gun on the ground, about fifteen to twenty feet away from where she initially saw [Appellant] pointing the gun at Mr. Oates. She stood by the gun to preserve the chain of custody, and radioed other officers for backup. Mr. Oates nervously stood nearby until [Appellant] was apprehended.

Meanwhile, Officer McGonigle went into a store at the corner of 16th and Nedro, where he knew that surveillance cameras were trained on that corner. By reviewing the surveillance video of three separate cameras, he could see [Appellant] point the gun, run, and enter the rear door of a property at 1602 Widener Place, which is at the next block north of Nedro. Officer Kinniry briefly asked another officer to stand by the gun, and then she entered the store to confirm that this was [Appellant's] flight path. Officer McGonigle exited the store and told backup officers to try to surround the front and back entrances of 1602 Widener Place.

Officer McGonigle then stood by the gun, as Officer Kinniry and another officer went to one entrance of 1602 Widener Place, and Officer John DeSanto and his partner went to the other entrance of 1602 Widener Place. The officers yelled into the property for [Appellant] to come out. [Appellant] told the officers that he did not have any guns, exited a back door or basement door of the property with his hands up, and was then arrested. Officer Kinniry testified that about ten minutes, at most, passed between the time that she recovered the gun and the time that [Appellant] was arrested.

\* \* \*

DNA analysis of the gun recovered revealed that at least three individuals with distinct DNA profiles touched the gun. One of those individuals was [Appellant] and [Appellant] left most of the

- 2 -

DNA on the sample. There were no fingerprints recovered from the gun.

Trial Ct. Op., 4/24/19, at 2-4 (record citations and footnotes omitted).

On April 12, 2017, the Commonwealth filed a criminal information charging Appellant with multiple offenses related to his possession of the firearm and assault. Appellant proceeded to a jury trial on April 2, 2018. At trial, the Commonwealth played a recording of the surveillance videos for the jury.

> During the Commonwealth's case-in-chief, this evidence was presented in a split-screen format that compiled simultaneous footage from four separate surveillance cameras as a 2x2 grid. During deliberations, the jury asked to review this video evidence again. Outside of the jury's presence, [the trial c]ourt directed the Commonwealth to play one video camera [angle] at a time, and to play only the clips from the three video cameras that allegedly depicted [Appellant].

*Id.* at 7 (record citations and footnote omitted). By showing one camera angle at a time, the altered video appeared larger than the video shown during the Commonwealth's case-in-chief. *Id.*

Appellant objected to the trial court's decision to alter the format of the video:

> [Appellant's Counsel]: Your Honor, my basis of objection is that the video should be replayed in the same manner it was [played] for trial. [The prosecutor] could have—if he wanted to play this video [featuring one camera angle at a time] for the jury, he could have . . . done that during trial. However, . . . it didn't happen that way. He played . . . the version that had three different videos playing at the same time. That's the decision that the Commonwealth made. They can't go back now and try to—
>
> THE COURT: It's not a different video. It's the same video.

\*    \*    \*

[Appellant's Counsel]: But I'm saying they can't . . . make highlights or alter the manner in which it was played for the jury. It's counsel's job and the Commonwealth's job to present their evidence as clear as possible.  I mean, when he presented evidence, he presented it in a manner that he chose to.  You can't look back and say I should have presented evidence differently.

N.T. Trial, 4/4/18, at 10-11.  The trial court overruled Appellant's objection.

Shortly thereafter, the jurors entered the courtroom and the trial court permitted them to watch the altered video.  The trial court did not allow the jurors to leave the jury box, but it did permit the jurors to stand up within the box for a better view of the screen.  After the jurors watched the altered video, they exited the courtroom and continued deliberations.

Ultimately, the jury convicted Appellant of the aforementioned offenses. On September 14, 2018, the trial court sentenced Appellant to five to ten years' imprisonment for persons not to possess firearms.  The trial court imposed no further penalties for the remaining convictions.  Appellant timely filed a post-sentence motion on September 24, 2018, which the trial court denied on October 26, 2018.

On November 13, 2018, Appellant timely filed a notice of appeal.  The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, which Appellant timely filed on November 20, 2018.[2]  The trial court filed a responsive opinion, concluding that it did not abuse its discretion by allowing the jury to view the video evidence during

---

[2] Appellant's Rule 1925(b) statement raised three issues.  However, Appellant now presents only one of those issues for this Court's review.

- 4 -

deliberations. The trial court emphasized that "[w]hile the **format** of the video presented to the deliberating jury differed from the format of the same video played three times for the jury during trial, the enlarged single-[camera angle] format did not distort the exhibit to the extent that it could be characterized as 'different' evidence." Trial Ct. Op. at 8 (emphasis in original). Moreover, the trial court determined that any error was harmless. *See id.* at 9-10.

Appellant now raises one issue for our review:

Did not the [trial] court abuse its discretion in permitting the jury to view a magnified version of a video clip during deliberations, where the video had not been magnified when it was shown during the trial and admitted into evidence?

Appellant's Brief at 3.

Relying on *Commonwealth v. Lilliock*, 740 A.2d 237 (Pa. Super. 1999), Appellant argues that a deliberating jury may only review trial exhibits "in the same manner as [the exhibits] were presented during trial." *Id.* at 12. In the instant case, Appellant contends that "the video shown to the deliberating jurors was shown in an altered and magnified format." *Id.* at 11. Because of the altered format, Appellant asserts that video was fundamentally different from the video shown to the jury during the Commonwealth's case-in-chief. *Id.* Further, Appellant insists that the trial "court's conscious object was to have the jury review the evidence in a **different** manner from the manner in which the evidence was initially presented at trial." *Id.* at 12 (emphasis in original). Under these circumstances, Appellant maintains that

"it was an abuse of discretion for the [trial] court to order the videos replayed for the jury in magnified form." *Id.* at 16.

Our review is informed by Pa.R.Crim.P. 646, which states:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).

>         \*      \*      \*

> (C) During deliberations, the jury shall not be permitted to have:

> (1) a transcript of any trial testimony;

> (2) a copy of any written or otherwise recorded confession by the defendant;

> (3) a copy of the information or indictment; and

> (4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(A), (C); *see also Commonwealth v. Morton*, 774 A.2d 750, 753 (Pa. Super. 2001) (holding the trial court did not violate the prior version of Rule 646 where, during deliberations, the jury was placed in the jury box, permitted to review a written confession briefly, not permitted to deliberate while in the jury box, and given a cautionary instruction).

"Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." *Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa. Super. 2012) (citations omitted).

> We point out that the trial is the forum for finding truth. The jury's deliberations represent the process by which the fact finders

- 6 -

establish what they believe to be true.  For policy reasons, where materials inform a jury and aid it in the difficult task of determining facts, the jury should be permitted to study those materials during its deliberations.

***Commonwealth v. Strong***, 836 A.2d 884, 886 (Pa. 2003) (citation and emphasis omitted).

"The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury." ***Barnett***, 50 A.3d at 194 (citations omitted).  "If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless." ***Id.*** (citations omitted). "Under this doctrine, an error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." ***Strong***, 836 A.2d at 887 (citation and quotation marks omitted).

In ***Lilliock***, "both parties used a [video] presenter, a video machine that enlarges a regular photograph on a video monitor, to assist them in presenting photographic evidence to the jury." ***Lilliock***, 740 A.2d at 243.  During deliberations, the jury did not have access to a video presenter. Consequently, the trial court allowed the jury to use a magnifying glass to review the photographs during deliberations.

On appeal, the appellant argued that the jury's use of the magnifying glass violated a prior version of Rule 646.  The ***Lilliock*** Court disagreed:

The expert witnesses relied upon an examination of the photograph during their testimony, and the Commonwealth presented the evidence via the video presenter. The magnifying lens was used by the jury to view the photographs in the **same manner** as they were presented during trial. This procedure assisted the jury in its truth-determining process. Thus, we conclude that the trial court did not err or abuse its discretion in allowing the jury to utilize a magnifying lens during deliberations.

*Id.* (emphasis added).

Instantly, the Commonwealth presented a "split-screen format that compiled simultaneous footage from four separate surveillance cameras as a 2x2 grid" during its case-in-chief. Trial Ct. Op. at 7. During deliberations, however, the trial court responded to the jury's request to review this evidence by directing the Commonwealth to present video from one camera angle at a time. *Id.* The trial court determined that it did not err in ordering the presentation of a different version of the video, because "the enlarged, single-[camera angle] format of the video played for the deliberating jury was the same evidence already played for the jury." *Id.* at 6 (emphasis omitted). Although the trial court correctly noted that the deliberating jury viewed "the same evidence," it was not presented "in the same manner" as the video played during the Commonwealth's case-in-chief. *See Lilliock*, 740 A.2d at 243.

Nevertheless, the Commonwealth's properly admitted evidence was overwhelming. *See Strong*, 836 A.2d at 887. As the trial court noted:

Officers McGonigle and Kinniry directly observed [Appellant] point a gun at someone and then flee after they announced their presence. Bystanders pointed Officer Kinniry to a firearm on the

ground along [Appellant's] flight path. There are no discernible issues with the chain of custody of that firearm, and the DNA on the firearm belongs primarily to [Appellant]. Officer McGonigle looked at nearby surveillance footage to determine [Appellant's] flight pattern, leading to the discovery of [Appellant] inside of a nearby vacant building where there was only one item of clothing—the hoodie that the officers allegedly saw [Appellant] wearing as he fled from them. The surveillance footage merely corroborates the officers' eyewitness testimony and aspects of their investigation. . . .

Trial Ct. Op. at 10-11 (citations omitted).

Additionally, the Commonwealth entered into evidence two photographs, which were "still shots" taken directly from the surveillance videos. *See* N.T. Trial, 4/3/18, 38-39. The photographs depicted an individual in a gray sweatshirt pointing a gun at another individual. *See* Commonwealth's Exs. 22-23. Unlike the video played during the Commonwealth's case-in-chief, the photographs each featured one image from a single camera angle. *Id.*

In light of the Commonwealth's overwhelming evidence, the prejudicial effect of allowing the deliberating jury to view the altered video was so insignificant by comparison that it is clear beyond a reasonable doubt that any error was harmless. *See Strong*, 836 A.2d at 887. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/19/19</u>